Cornelius SHAW, on behalf of herself and all persons similarly situated, Plaintiff,

v.

Caspar WEINBERGER, Secretary, United States Department of Health, Education and Welfare, Defendant.

No. C–C–74–105.

United States District Court, W. D. North Carolina, Charlotte Division.

May 14, 1975.

Donald S. Gillespie, Jr., and Richard H. Hart, Jr., Legal Aid Society, Mecklenburg County, Charlotte, N. C., for plaintiff.

Keith S. Snyder, U. S. Atty., and Douglas M. Martin, Asst. U. S. Atty., for defendant.

## ORDER

McMILLAN, District Judge.

This is a suit challenging the constitutionality of the manner in which the Secretary of the Department of Health, Education and Welfare chose to implement certain provisions of Title XVI of the Social Security Act, which became effective on January 1, 1974. A hearing was conducted in this court on March 18, 1975. There is no disagreement as to the facts.

Plaintiff Cornelius Shaw, a black woman suffering from severe pulmonary insufficiency and facing a financial emergency, applied at a Social Security district office on January 17, 1974, for benefits under Title XVI of the Social Security Act, commonly known as the Supplemental Security Income Program or "SSI." She requested emergency advance payments and presumptive disability payments. She submitted a letter from her physician in which he certified her medical condition and her inability to engage in substantial gainful employment. She also apparently convinced

the interviewer of the immediacy of her financial needs. Nonetheless, Ms. Shaw was informed that neither type of payment could be authorized until additional medical evidence had been submitted and evaluated. Ms. Shaw was later examined by a state physician. Having received no indication of the status of her application, she filed suit in this court on May 14, 1974. On June 2, 1974, almost five months after making the initial application, she received two SSI checks which included retroactive benefits dating from January, 1974. Ms. Shaw was found eligible for Title II disability benefits in July, 1974.

Plaintiff seeks a ruling that § 12751 et seq. of the SSI Claims Manual, which outlines the procedure through which her claims were processed, be declared violative of due process and contrary to the implicit purpose of Title XVI.

The court has jurisdiction over the suit under the provisions for judicial review contained in the Administrative Procedure Act, 5 U.S.C. §§ 701–6.

Both emergency advance payments and presumptive disability payments are authorized by 42 U.S.C. § 1383(a)(4), which states:

"The Secretary—

(A) may make to any individual initially applying for benefits under this subchapter who is presumptively eligible for such benefits and who is faced with financial emergency a cash advance against such benefits in an amount not exceeding $100; and

(B) may pay benefits under this subchapter to an individual applying for such benefits on the basis of disability for a period not exceeding 3 months prior to the determination of such individual's disability, if such individual is presumptively disabled and is determined to be otherwise eligible for such benefits, and any benefits so paid prior to such determination shall in no event be considered overpayments for purposes of subsection (b) of this section solely because such individual is determined not to be disabled."

A finding of presumptive disability is obviously a prerequisite to the award of presumptive disability benefits and also to the award of emergency advance benefits if the applicant claims to be disabled. Under Section 416.953 of the Regulations, impairments for which one may be declared presumptively disabled are divided into two types. The first is impairments which are "severe" and "readily observable." A Social Security *district* office may find presumptive disability in situations involving such impairments with no further evidence. All other impairments, however, require a finding by the determiners at the state agency level that a presumptive disability exists. These determiners must verify and corroborate the evidence presented by the applicant.

At the time Ms. Shaw applied for benefits, Sections 12751–12752 of the SSI Claims Manual provided that only three types of impairments were sufficiently observable and severe to warrant presumptive disability classification by the *local* district offices without further evidence. These impairments were amputation of *two limbs,* amputation of *a leg at the hip,* and allegation of *total deafness.* Applications alleging any other type of impairment had to be processed through the *state* agency.

In North Carolina between January 1, 1974, and July 3, 1974, only 171 presumptive disability determinations were made, an average of about six per week. Applicants such as Ms. Shaw waited several months for benefits from this program whose main purpose was to provide *immediate* relief with a minimum of red tape.

█ Although the enabling statute allowed wide discretion on the part of the Secretary, even discretion as to whether to make such payments at all, his decision to award these benefits created a property interest in the payments. The procedure through which applications are processed must therefore comply with the dictates of due process. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970);

Barnett v. Lindsay, 319 F.Supp. 610 (D.Utah 1970). In this situation due process required a determination of presumptive disability more prompt than the five-month delay to which Ms. Shaw was subjected.

■■ The program as it was being administered in 1974 not only violated due process but also subverted the purpose of Congress in enacting the authorizing legislation. The fact that 42 U.S.C. § 1383(a)(4) makes provision for payments to those facing financial emergencies and those presumptively disabled clearly indicates that Congress intended to give the Secretary the authority to provide for the more *immediate* needs of applicants. Although the Secretary was given a great deal of latitude as to how Title XVI was to be administered, the procedure set out in the 1974 Claims Manual was so restrictive as to defeat the purpose of the statute under which it was promulgated. Mourning v. Family Publicating Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936).

The fact that §§ 12751 et seq. of the SSI Claims Manual was violative of due process and contrary to congressional intent does not signal a conclusion to this case. Since the time Ms. Shaw brought suit, the Secretary has made several substantial changes in the determination process. One such change is the addition of six categories of impairments to the list of those which a district office may deem presumptive disabilities without further evidence. There are positive indications that the amended procedure has resulted in much more efficient processing of claims involving presumptive disability. In North Carolina 2,074 presumptive disability determinations were made between July 3, 1974, and December 25, 1974, an average of about 83 per week.

■ Because the Secretary appears to have recognized the problems created by the previous procedures and has taken steps to correct them, the court will not decide this case on the basis of the procedure in effect when Ms. Shaw filed suit.

The most equitable solution appears to be deferral of a decision until additional information is available as to the success of the amended procedures. Action on each motion for summary judgment will therefore be postponed, as will a decision on the class action issue. If the next several months do not show a continued marked improvement in the determination process, the court will hear arguments on appropriate remedies.

It is therefore ordered that the defendant submit to the court no later than August 1, 1975, a report on the determinations of presumptive disability in the SSI program in North Carolina for the first half of 1975. The report should provide data relating not only to the number of determinations made, but also to the length of time involved in the determinations.

Action on all pending motions is deferred.