PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LILA M. MALLETTE,
Plaintiff-Appellant,

v.

ARLINGTON COUNTY EMPLOYEES'

No. 94-2298

SUPPLEMENTAL RETIREMENT
SYSTEM II; ARLINGTON COUNTY
BOARD OF SUPERVISORS,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-870-A)

Argued: November 1, 1995

Decided: August 1, 1996

Before ERVIN and WILKINS, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Ervin wrote the
opinion, in which Judge Wilkins and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Robert Dean Weiss, Fairfax, Virginia, for Appellant.
Andrew Ray McRoberts, Assistant County Attorney, Arlington, Vir-

ginia, for Appellees. **ON BRIEF:** Barbara S. Drake, County Attorney, Arlington, Virginia, for Appellees.

_____

**OPINION**

ERVIN, Circuit Judge:

After Arlington County denied her application for service-related disability retirement benefits, Lila Mallette brought this action under 42 U.S.C. § 1983, claiming that the County violated her constitutional right to due process by failing to provide adequate notice. The district court granted the County's motion for summary judgment, reasoning that Mallette had no "property interest" entitling her to due process, and that, in any event, she had received all the process she was due. We disagree. We find that the County ordinance endowed Mallette with a legitimate claim of entitlement to the benefits, and thus she had a property interest in her application protected by the Due Process Clause. We further find that significant issues of material fact remain regarding whether Mallette received the minimum procedural safeguards compelled by the Constitution. Accordingly, we reverse and remand.

I.

In reviewing the district court's grant of summary judgment, we consider the evidence in the light most favorable to the appellant. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Lila Mallette suffers from spina bifida and, as a result, has a history of severe and debilitating back pain. In 1978, a major surgery greatly improved Mallette's condition, eliminating much of her pain and allowing her to engage in most normal activities with the help of a cane.

After the successful surgery, Mallette undertook various types of volunteer work for Arlington County. In 1981, she volunteered at the Arlington County Visitor's Center, where she later applied for part-

2

time employment. At the time she applied, Mallette informed the County of her medical history and passed a pre-employment physical examination. The County initially hired Mallette in a part-time position. About eight months later, Mallette became the full-time Coordinator of the Visitor's Center and a member of the County's employee retirement plan--the Arlington County Employees' Supplemental Retirement System II.

In 1983, Mallette was injured in an auto accident while on duty. After that accident, Mallette experienced renewed pain and weakness, requiring her to spend most of her non-working time lying down. Later the same year, as part of her duties, Mallette went on a strenuous week-long bus tour of County tourist sites. After the bus trip her condition drastically worsened, forcing her to stop working completely and barring her from most activities. She now spends nearly all of her time lying down and must take narcotic pain medications. According to her physician, Mallette's condition has permanently incapacitated her and prevents her from working.

After her re-injuries in 1983, Mallette applied for worker's compensation benefits, which she received until 1993. In March 1993, near the end of the 500-week statutory maximum for payment of worker's compensation benefits, the County Personnel Department sent a letter informing Mallette that her payments would cease on June 6, 1993. However, the letter stated that "[t]he Retirement System will begin paying you effective June 7, 1993." The letter further instructed Mallette to contact the Retirement Office"for additional information regarding your retirement benefits." According to Mallette, conversations with County employees led her to believe that the County would convert her worker's compensation benefits to service-related retirement benefits as a matter of course.

On March 17, 1993, Mallette submitted an application for service-connected disability retirement benefits to the County Board of Supervisors. On May 28, 1993, a physician for the Retirement System, William A. Hanff, examined Mallette and concluded that she was permanently disabled and was eligible for service-connected disability retirement benefits. Dr. Hanff gave Mallette a copy of his report, which stated that she "should be permanently retired on job connected disability."

3

On June 26, 1993, the System's Board of Trustees notified Mallette that it would "consider [her] disability application at its next meeting," to be held July 1, 1993. The notice "requested" Mallette's presence and "encouraged" her to attend. Approximately 125 pages of medical and administrative records, generated over the ten years of Mallette's worker's compensation case, accompanied the notice. Also enclosed was a copy of Dr. Hanff's report, recommending that Mallette receive service-related disability benefits. [1]

Mallette appeared at the hearing unrepresented by counsel. Before the 8:00 a.m. proceeding began, Retirement Administrator Irwin Mazin handed Mallette a copy of a revised medical report by Dr. Hanff, dated June 29, 1993. The new report indicated that, after a telephone conversation with Mazin, Dr. Hanff reversed his earlier conclusion and instead recommended that the Board deny Mallette's service-related claim. Dr. Hanff stated that it was not medically certain that the automobile accident was the "sole reason for her to be on job-connected disability without any pre-existing condition."

Mallette submitted a written statement at the hearing.[2] The parties

_____

[1] The County claims that it also enclosed a copy of the recommendation of the Retirement Administrator, Irwin Mazin, that the Board of Trustees deny Mallette's application. Oddly, that document was dated July 1, 1993. In addition, the Administrator's recommendation purported to be based upon the evaluation of the Medical Examining Board physician--who had still recommended approval at that point--and upon information furnished by Mallette--who had not yet been heard. An identical copy of the document was apparently mailed to Mallette after July 1, 1993, for the purpose of notifying her of the adverse action taken at the hearing. For summary judgment purposes, we accept Mallette's assertion that she did not receive a copy of Mazin's recommendation prior to the hearing.

[2] Mallette submitted a long, rambling statement which appears to be largely aimed at refuting information contained in her worker's compensation medical records. In the course of her statement, Mallette offered to supply any information to assist the Board in "making its decision." She stated that she "had no idea there would be any problem with [her] retirement" and asked if she applied "for the wrong kind of retirement." She stated that she had not yet consulted an attorney but would "if necessary" and that she would "fight for her rights." The parties dispute whether that language necessarily indicates that Mallette had actual notice of the nature of the hearing.

4

dispute whether she also testified. Mallette contends that the Board gave her no opportunity to question Dr. Hanff or the System Administrator. She did not request time to present additional evidence or witnesses.

After the hearing, the Board of the Retirement System denied Mallette's claim for service-connected disability retirement benefits. The Board found that her accident was not the "sole reason" for her disability in view of her preexisting disability.

Mallette unsuccessfully sought administrative redress, then filed an action in the District Court seeking a declaration, injunctive relief, and other remedies under § 1983, based on due process and equal protection. She later withdrew the equal protection claim. The district court granted the County's motion for summary judgment. It ruled that Mallette had no property interest entitling her to procedural due process. And it further found that, even if due process applied, Mallette had received all protections due because she was notified of and attended the hearing.

II.

The Due Process Clause of the Fourteenth Amendment reduces unfair or mistaken deprivations of individual interests by commanding states to provide persons in jeopardy of loss with certain procedural safeguards. It is by now axiomatic that the language of the Due Process Clause--"nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."--calls for two separate inquiries in evaluating an alleged procedural due process violation. First, did the plaintiff lose something that fits into one of the three protected categories: life, liberty, or property? Board of Regents v. Roth, 408 U.S. 564, 569 (1972). And, if so, did the plaintiff receive the minimum measure of procedural protection warranted under the circumstances? Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). We conclude that the Arlington County Retirement System afforded Mallette a property interest in her right to apply for disability retirement benefits, triggering procedural due process protection. We further conclude that Mallette raised genuine issues of material fact regarding whether the County deprived her of her property interest without meaningful notice and an opportunity to be heard

5

--the minimum procedural safeguards guaranteed by the Constitution.

A.

Mallette is entitled to procedural due process only if she holds a constitutionally protected property interest in the disability retirement benefits. Roth, 408 U.S. at 569. The Supreme Court provided the most frequently relied-upon definition of "property interest" in Board of Regents v. Roth:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. Although clothed in due process protection by the Constitution, "property interests" are the creatures of independent positive law. As the Court explained, property rights

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. Thus, to decide whether Mallette has a property interest protected by the Fourteenth Amendment, we must look for an independent source of a "claim of entitlement." We find such a source in the Arlington County Code.

Virginia law establishes a retirement system for the benefit of state, county, and local employees, but permits certain localities to provide their own retirement plans. Va. Code Ann. § 51.1-800 et seq. (Michie 1994 & Supp. 1995). State law mandates, however, that localities choosing to opt out of the state employee retirement system pay no less than two-thirds of the state benefits. Id. § 51.1-800(A). Arlington County has opted out of the state system, and the County Board of Supervisors administers its own retirement program--the County

6

Employees' Supplemental Retirement System II ("the System"). Arlington, Va. Code § 46-1 et seq. (Supp. 1994). The System offers membership to Arlington County's full-time employees, who contribute through salary deductions. Id. § 46-32. It provides several types of retirement benefits, including service-connected disability benefits.

The County Code provides that "any member . . . may at any time prior to his normal retirement date retire on account of service-connected disability that is not due to the employee's willful misconduct." Id. § 46-41(a). The ordinance directs payment of benefits once a medical examining board has certified that the disability (1) is permanent; (2) incapacitates the employee for his or her duties; and (3) resulted from an accident or injury that occurred in the actual performance of a duty. Id. Employees with a pre-employment disability are eligible for service-connected disability benefits, but only if the board finds that the employee "would have been entitled to a service-connected disability allowance notwithstanding the pre-employment disability." Id. § 46-41. Any member meeting these conditions "shall receive" a percentage of his or her average final compensation upon retirement. Id. § 46-42.

Justice O'Connor summarized the law governing the existence of a statutory entitlement in Board of Pardons v. Allen:

> The Roth decision teaches that a mere expectation of a benefit--even if that expectation is supported by consistent government practice--is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered. In my view, the distinction between an "entitlement" and a mere "expectancy" must necessarily depend on the degree to which the decision-makers' discretion is constrained by law. An individual simply has nothing more than a mere hope of receiving a benefit unless the decision to confer that benefit is in a real sense channeled by law. Because the crucial inquiry in determining the creation of a protected interest is whether a statutory entitlement is created, it cannot be sufficient merely to point to the existence of some "standard." Instead, to give rise to a protected liberty interest, the statute must

7

act to limit meaningfully the discretion of the decision-makers.

482 U.S. 369, 382 (1987) (O'Connor, J., dissenting) (emphasis in original).

Accordingly, our focus must center on the degree of discretion afforded to the Retirement System's decisionmakers. The Arlington Code narrows the substantive range of the Board's decisionmaking to the application of certain particularized eligibility criteria. Once an employee meets those particularized standards, the Code does not allow administrators the discretion not to award benefits, or to apply additional or alternate eligibility criteria. Arlington's ordinance speaks to its officials in compulsory terms: qualifying members "shall receive" benefits. That mandatory language creates a "legitimate claim of entitlement" in employees who meet the System's standards. Compare Daniels v. Woodbury County, 742 F.2d 1128, 1132 (8th Cir. 1984) (mandatory language in Iowa general relief statute creates a "legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements") (citations and internal quotations omitted), and Griffeth v. Detrich , 603 F.2d 118, 121 (9th Cir. 1979), cert. denied sub nom. Peer v. Griffeth, 445 U.S. 970 (1980) (state code using mandatory language requiring localities to provide general relief, combined with county regulations providing detailed, objective eligibility criteria, restrict the discretion of intake eligibility workers and create legitimate expectations of receipt in those who meet those standards), with Jacobs Visconsi & Jacobs Co. v. City of Lawrence, Kansas, 927 F.2d 1111, 1116 (10th Cir. 1991) ("[S]tate law's requirement that zoning decisions be reasonable . . . is insufficient to confer upon the applicant a legitimate claim of entitlement."); Mahone v. Addicks Utility Dist. of Harris County, 836 F.2d 921, 930-31 (5th Cir. 1988) (finding no property interest in property owner's application for annexation by a municipal utility district where the authorizing statute simply set out a guiding policy to inform the district's otherwise broad discretion); Davis v. Ball Memorial Hosp. Ass'n, 640 F.2d 30, 38 (7th Cir. 1980) (indigent patients had no property right because regulations contemplated that eligible applicants might exceed resources and did not mandate assistance when eligibility was found); and Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if `proce-

8

dural' requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions," but the Nevada Gaming Act creates no such interest in a gaming license because it grants to Nevada Gaming Commission "full and absolute power to deny any application for any cause [it] deemed reasonable."). Supreme Court decisions addressing the existence of statutorily created "liberty interests provide a close analogy. **3** <u>Compare Hewitt v. Helms</u>, 459 U.S. 460, 472 (1983) (examining a state statute and its implementing regulations governing an inmate's confinement to administrative segregation, and finding that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest"), with <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249 (1983) (holding that interstate transfers of federal prison inmates did not implicate a protected liberty interest where no "particularized standards or criteria guide[d] the State's decisionmakers," but decisionmakers were given "unfettered" discretion to transfer inmates for "any constitutionally permissible reason or for no reason at all") (citations and internal quotations omitted).

The statutory claim of entitlement in this case is bolstered by the nature of the benefit at stake. The right to payment of disability retirement benefits arises by virtue of past labor services and past contributions to a disability fund. Member employees, who contribute their earnings to the system, reasonably expect that accrued benefits will be waiting if they need them and qualify for them. As a member of the class of persons the Retirement System was intended to protect and benefit, Mallette has more than an abstract desire for the benefits. If she can make a prima facie case of eligibility, she has a property interest in those benefits and an accompanying right to be heard. <u>See</u> <u>Ressler v. Pierce</u>, 692 F.2d 1212, 1215 (9th Cir. 1982) (applicant had "a constitutionally protected `property' interest in [HUD rent subsidies] by virtue of her membership in a class of individuals whom the [ ] program was intended to benefit").

_____

**3** The Supreme Court recently abandoned this approach in the context of regulations governing prison administration. <u>Sandin v. Conner</u>, 132 L. Ed. 2d 418, 429, 30 (1995). However, the Court reaffirmed its vitality "in the ordinary task of construing a statute defining rights and remedies available to the general public." <u>Id.</u> at 428.

9

We find that the Arlington Code vests county employees who meet its eligibility requirements with a right to receive disability retirement benefits when they suffer work-related disabilities. Having established that right, the County cannot deny benefits to employees without fair procedures. We join other courts that have accorded federal constitutional protection to disability retirement benefits. E.g., Ostlund v. Bobb, 825 F.2d 1371, 1373 (9th Cir. 1987), cert. denied, 486 U.S. 1033 (1988) (California Government Code"clearly gives city police officers a vested right to disability retirement if they suffer a work-related disability," creating a property interest in those benefits and an accompanying right to a hearing concerning entitlement); Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir. 1978), cert. denied, 442 U.S. 929 (1979) (accident disability retirement benefits under New York City's Employees' Retirement System protected by due process); cf. Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (Social Security disability benefits protected by due process).

Arlington County makes two arguments against the existence of a property interest here. First, it argues that, because Mallette may not receive benefits unless she meets the eligibility requirements, and because the Board determined that Mallette did not meet those requirements, Mallette has no property interest in the benefits. That argument confuses the right to receive a benefit with the right to fair decision-making before the benefit is denied. See Bennett v. Tucker, 827 F.2d 63, 73 (7th Cir. 1987) ("A state may not deprive an individual of his or her property interest without due process, and then defend against a due process claim by asserting that the individual no longer has a property interest."). Under the County's approach, any adverse decision on the merits would insulate it from the obligation to provide due process. Conversely, no employee could have a property interest triggering due process unless the agency had already awarded them the benefit--a convenient result for the County--but one that conflicts with the law. The Supreme Court has explained that a person may hold a property interest in a benefit even before it has been determined that she is, in fact, eligible for the benefit.

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

10

Perry v. Sindermann, 408 U.S. 593, 601 (1972) (emphasis added). By the same token, "[t]he right to be heard does not depend upon an advance showing that one will surely prevail at the hearing." Fuentes v. Shevin, 407 U.S. 67, 87 (1972). In Goldberg v. Kelly, the Court held that welfare claimants "had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them," and thus had a right to due process, even though "[t]he recipients had not yet shown that they were, in fact, within the statutory terms of eligibility." Roth, 408 U.S. at 577 (citing Goldberg v. Kelly, 397 U.S. 254 (1969)). Just as the plaintiffs in Goldberg were not required to show that they would prevail on the merits before they were entitled to due process, Mallette need not prove that her injury meets County standards to rightfully claim a modicum of procedural fairness. We hold that Mallette has a property interest in her potential eligibility for disability retirement benefits, whether or not she ultimately prevails on the merits.**4**

Second, the County argues that, because Mallette had not yet received disability benefits, but was merely an applicant, she could not have a property interest in the benefits. Whether an applicant for benefits is entitled to the same process as a recipient whose benefits are revoked is a thread expressly left loose by the Supreme Court. See Lyng v. Payne, 476 U.S. 926, 942 (1986) (acknowledging that the Court has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment," but leaving question unresolved); Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 320 n.8 (1985) (noting that the Court has never decided whether applicants for benefits have the same claim of entitlement as recipients, but deciding the case on other grounds); Gregory v. Town of Pittsfield , 470 U.S. 1018, 1021 (1985) ("[o]ne would think that where state law creates an entitlement to general assistance based on certain substantive conditions, there

_____

**4** Because we find that the authorizing ordinance created a property interest, we need not address Mallette's argument, relying on Perry v. Sinderman, 408 U.S. 593 (1972), that the County's written and oral representations, together with its history of worker's compensation payments, generated a "mutually explicit understanding" justifying her claim of entitlement.

11

similarly results a property interest that warrants at least some procedural safeguards. Although this Court has never addressed the issue whether applicants for general assistance have a protected property interest, the weight of authority among lower courts is [that they have].") (O'Connor, J., dissenting from denial of certiorari) (citations omitted); Peer v. Griffeth, 445 U.S. 970-71 (1980) (Rehnquist, J., dissenting from denial of certiorari) (questioning Ninth Circuit's ruling that Goldberg's protection of terminated recipients of welfare benefits applies equally to applicants for those benefits).

But while the Court has not spoken to whether applicants have the same procedural rights as recipients, its jurisprudence militates against a facile rule denying due process to all applicants. In Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, the Court agreed with inmate applicants for parole that the structure and language of the Nebraska parole statute created a "legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists." 442 U.S. 1, 12 (1979). Older cases concerning state bar applications also suggest that a desired plum need not be already in hand before warranting the shelter of the Due Process Clause. E.g., Willner v. Committee on Character & Fitness, 373 U.S. 96, 102 (1963) ("[T]he requirements of due process must be met before a State can exclude a person from practicing law."); Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1957) (under the Due Process Clause, "officers of a state cannot exclude [a bar] applicant when there is no basis for their finding that he fails to meet [its admission] standards"); Goldsmith v. United States Bd. of Tax Appeals, 270 U.S. 117, 123 (1926) (applicant for admission to practice before Board of Tax Appeals entitled to notice and hearing).

As far as we can tell, every lower federal court that has considered the issue has rejected the "application/revocation" distinction. For example, the Ninth Circuit reversed a district court's finding of no property interest based on an applicant-recipient distinction. Griffeth v. Detrich, 603 F.2d 118, 120-122 9th Cir. 1979). It ruled that the proper inquiry was to review the language of the authorizing legislation to learn the extent to which it restricted the discretion of decisionmakers. Id. at 122. The Eighth Circuit followed Griffeth in refusing to distinguish applicants for county public assistance. Daniels v. Woodbury County, 742 F.2d 1128 (8th Cir. 1984). The court judged

12

the applicant/recipient distinction to "oversimplif[y]" the proper analysis: whether the language of the state or local law has vested a legitimate claim of entitlement in the plaintiff. Id. at 1132. See also National Ass'n of Radiation Survivors v. Derwinski , 994 F.2d 583, 588 (9th Cir. 1992), cert. denied 114 S.Ct. 634 (1993) ("[T]he district court correctly concluded that both applicants for and recipients of SCDD benefits possess a constitutionally protected interest in those benefits."); Haitian Refugee Ctr., Inc. v. Nelson, 872 F.2d 1555, 1562 (11th Cir. 1989) (finding an entitlement interest exists in the right to apply for Special Agricultural Worker status), aff'd sub. nom. McNary v. Haitian Refugee Ctr, Inc., 498 U.S. 479 (1991); Holbrook v. Pitt, 643 F.2d 1261, 1278 n.35 (7th Cir. 1981) ("Applicants who have met the objective eligibility criteria of a wide variety of governmental programs have been held to be entitled to protection under the due process clause."); Kelly v. Railroad Retirement Bd., 625 F.2d 486, 490 (3d Cir. 1980) ("[D]ue process must attach to the process of determining ineligibility, whether at the outset or after receipt of benefits."); Wright v. Califano, 587 F.2d 345, 354 (7th Cir. 1978) ("[D]enials do not necessarily deserve less due process than terminations."); Raper v. Lucy, 488 F.2d 748, 752 (1st Cir. 1973) (due process protection of the liberty interest in the right to operate a motor vehicle applies equally to drivers' license application proceedings and suspension proceedings); Colson ex rel. of Colson v. Sillman, 852 F. Supp. 1183, 1190 (W.D.N.Y. 1992), rev'd on other grounds, 35 F.3d 106 (2nd Cir. 1994) ("For purposes of assessing whether there is a property interest in [Erie County Physically Handicapped Children's Program] benefits implicating due process protection, the fact that plaintiffs are applicants for benefits rather than current recipients is not determinative."); National Ass'n of Radiation Survivors v. Walters, 589 F. Supp. 1302, 1312 (N.D. Cal. 1984), rev'd on other grounds, 473 U.S. 305 (1985) ("Applicants for [veterans' Service-Connected Death and Disability] benefits, as distinct from recipients threatened with total or partial termination, also have a property interest in the receipt of those benefits."); Harris v. Lukhard, 547 F. Supp. 1015, 1027 (W.D. Va. 1982) ("The Social Security Act and Virginia's implementing "regulations create a legitimate entitlement and expectancy in Medicaid benefits for applicants who claim to meet the eligibility requirements."); Davis v. United States, 415 F. Supp. 1086, 1091 (D. Kan. 1976) ("Although [an applicant] . . . has[not] yet been administra-

13

tively adjudged entitled to receive benefits . . .[he] nonetheless possesses a property interest of sufficient magnitude to invoke" due process protection because the regulations' objective standards "create a legitimate expectancy that an individual application will not be denied" in the absence of a factual determination of non-eligibility.); Shaw v. Weinberger, 395 F. Supp. 268, 270 (W.D.N.C. 1975) (due process protects applicants for Supplemental Security Income Program benefits). But see state cases reaching the contrary conclusion. Gregory v. Pittsfield, 479 A.2d 1304, 1308 (Me. 1984), cert. denied, 470 U.S. 1018 (1985) ("In Maine a general assistance applicant has no property interest in benefits until he has been found qualified and eligible by the local authority . . . . "); Sumpter v. White Plains Hous. Auth., 278 N.E.2d 892, 894 (N.Y.), cert. denied, 406 U.S. 928 (1972) ("[A] party aggrieved by loss of a pre-existing right or privilege may enjoy procedural rights not available to one denied the right or privilege in the first instance."); Zobriscky v. Los Angeles County, 105 Cal. Rptr. 121, 123 (Cal. Ct. App. 1972) (no "general requirement for an evidentiary hearing in connection with the denial of an application for welfare benefits").

The County relies on Eldridge v. Bouchard, 645 F. Supp. 749 (W.D. Va. 1986), aff'd without opinion, 823 F.2d 546 (4th Cir. 1987), to assert that there can exist no property interest unless a right or privilege is already being enjoyed. We do not read Eldridge to stand for such a rule. There, 139 employees of a southwestern division of the Virginia Department of State Police challenged the payment of a salary differential to employees in the Northern Virginia area. Id. at 750. The district court held that the plaintiffs had no property interest in a salary increase. Id. at 757. Although the court stated that the defendants did not revoke a privilege that the plaintiffs were already receiving, it did not rest upon that fact in reaching its decision. Id. at 756-57. The crux of its decision was that the plaintiffs had shown no source of "entitlement in a salary differential but only a desire to receive it." Id. Eldridge also importantly differed from this case because it concerned a class-wide, "legislative-type" policy decision, rather than a determination of an individual's entitlement to an established benefit. When a government makes a decision affecting a class of people, the Due Process Clause does not require that a state provide due process to each individual member of the affected group.

14

O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 800 (1980) (Blackmun, J., concurring).

We join our sister courts in rejecting the mechanical and simplistic applicant/recipient distinction where a statute mandates the payment of benefits to eligible applicants based on objective, particularized criteria.**5** As explained in Roth, the Supreme Court's procedural due process jurisprudence focuses on whether statutory provisions create a right, not whether benefits have been received in the past. 408 U.S. at 577. The Arlington Retirement System creates in its members a legitimate expectation of receiving benefits and a consequent right to be heard. Eligible applicants are no less entitled to that expectation than are eligible recipients, and the potential consequences of denying disability benefits are no less potentially dire than those of revoking them.

B.

Having decided that due process applies to Mallette's application for benefits, we turn to the question of what process is due. Goss v. Lopez, 419 U.S. 565, 577 (1975). At a minimum, the Constitution requires notice and some opportunity to be heard. Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 178 (1951). Above that threshold, due process has no fixed content; it is "flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). What process is warranted in a given case depends on the balancing of three factors:

_____

**5** As noted by the Eighth Circuit and others, the applicant/recipient approach is reminiscent of the discredited wooden distinction between "rights" and "privileges." Daniels , 742 F.2d at 1132 n.6. But while rejecting a rule that applicants are entitled to no process, we recognize that an applicant sometimes may be due less process than one who already has been receiving benefits. That is because applications for benefits often turn on objective factors not productively developed in a hearing, such as age or length of employment. But where eligibility turns on subjective factors, an applicant no less than a recipient is entitled to an opportunity to be heard.

15

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).**6**

These factors lead us to conclude that Mallette has alleged facts sufficient to persuade a reasonable factfinder that she was deprived of the minimum procedural safeguards guaranteed her under the circumstances. First, the strength of an incapacitated employee's interest in retirement disability benefits is self-evident. Second, viewed in the light most favorable to Mallette, the County's affirmatively misleading notice resulted in an unacceptable likelihood of error. The County

_____

**6** Additionally, postdeprivation remedies provided by a state are a factor to be considered when applying the Mathews balancing process:

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

Zinermon v. Burch, 494 U.S. 113, 126 (1990). Thus, if Virginia law provided an opportunity for Mallette to seek redress for an erroneous denial of benefits in state court, the process available to her--both before and after the denial of benefits--may be adequate to comply with the Due Process Clause. See Mathews, 424 U.S. at 349 (noting availability of postdeprivation review in upholding sufficiency of process provided to recipients of Social Security disability payments prior to termination). Whether relief from an adverse determination by the System's Board of Trustees was available to Mallette was neither briefed nor argued by the parties, except that the County denied her request for reconsideration of its decision.

16

sent Mallette a letter informing her that her retirement benefits "would begin" June 7, 1993. Mallette contends that she understood from conversations with County workers that her application for retirement benefits was largely a formality, and that her worker's compensation benefits would be "converted" to retirement as a matter of course. Most significant, the County furnished Mallette with the report of its own physician, recommending that her application be granted. Not until she arrived on the morning of the hearing did Mallette receive Dr. Hanff's revised report. Based on those facts, Mallette could not have understood the adverse nature of the hearing, could not have adequately evaluated her need for counsel, and could not have prepared appropriate rebuttal evidence.[7] The risk of an inaccurate and unfair deprivation mounts when decisionmaking is one-sided. McGrath, 341 U.S. at 170.

Turning to the third Mathews factor, we cannot find that the County would have been unduly burdened by providing accurate and timely notice to Mallette. In fact, the County's own hearing procedures information sheet--which it claims to have provided Mallette-- declares that "[b]y the Friday before the hearing on a disability retirement application, the Administrator, by certified U.S. mail, will send [the applicant] any documents to be presented to the Board by the Administrator. . . ." It is undisputed that the County failed to provide

_____

[7] We express no opinion concerning Mallette's ultimate eligibility for benefits. However, we note that Mallette's inability to adequately challenge Dr. Hanff's revised report may have resulted in actual error in the Board's decision. The County ordinance provides that an employee with a pre-employment disability is eligible for service-connected disability if the Board finds that the employee "would have been entitled to a service connected disability allowance notwithstanding the pre-employment disability." Arlington, Va. Code § 46-27 (emphasis added). In Dr. Hanff's revised report, he seemingly applied a different standard, stating that, "with respect to her automobile accident in 1983 being the sole reason for her to be on job connected disability retirement without any pre-existing condition cannot be said within a reasonable degree of medical certainty." (emphasis added). Similarly, the conclusion and recommendation of Irwin Mazin appears to be based on a standard other than that prescribed by the County Code: "I believe these two incidents could not be the only cause of her disability." (emphasis in original).

17

to Mallette that measure of process which it had itself determined to be appropriate.

The County argues that it owed Mallette no more process than she received: She knew when and where the hearing was held, she appeared, she submitted a written statement, and she had a chance to say anything she wanted to say.**8** We do not share that formalistic understanding of meaningful notice. As the Supreme Court has explained, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise parties of the pendency of the action and afford them an opportunity to present their objections." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13 (1978) (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)). Because we find sufficient evidence in the record to suggest that Mallette did not receive notice "reasonably calculated" to afford her a meaningful opportunity to present her side at the hearing before the System's Board of Trustees, we remand the case for further proceedings. On remand, the district court should apply the Mathews balancing test to evaluate whether the process accorded Mallette was constitutionally adequate, taking into account, where appropriate, any avenues of relief that were available to her under Virginia law.

REVERSED AND REMANDED
_____
**8** The parties dispute whether Mallette testified, and whether she was given an opportunity to dispute the Administrator's evidence.

18