**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 03-2119**

_____

VICTORIA M. BUTLER,

Plaintiff - Appellant,

versus

RECTOR AND BOARD OF VISITORS OF THE COLLEGE OF
WILLIAM AND MARY; TIMOTHY J. SULLIVAN,
President; VIRGINIA K. MCLAUGHLIN, Dean;
THOMAS J. WARD, Associate Dean; TERI B.
ANCELLOTTI, Doctor; DENNIS FRANK; CHARLES R.
MCADAMS, III, Doctor,

Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  James E. Bradberry, Magistrate
Judge.  (CA-02-85-4)

_____

Argued:  November 30, 2004          Decided:  February 8, 2005

_____

Before TRAXLER, GREGORY, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote a
concurring opinion.

_____

**ARGUED:** Carolyn P. Carpenter, Richmond, Virginia, for Appellant.
Catherine Crooks Hill, Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:**
Jerry W. Kilgore, Attorney General of Virginia, Judith Williams
Jagdmann, Deputy Attorney General, Edward M. Macon, Senior
Assistant Attorney General/Chief, Richmond, Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff-appellant Victoria Butler was expelled from William and Mary's School of Education Community Counseling Masters Program ("Counseling Program") following the Spring 2002 semester. Butler sued the defendants-appellees, the Rector and Board of Visitors of the College of William and Mary ("William and Mary"), claiming that her expulsion violated both procedural and substantive due process and constituted a breach of contract and tortious interference with contract under Virginia law. The district court dismissed all of Butler's claims with prejudice pursuant to Federal Rule of Civil Procedure 50(a). For the reasons given herein, we affirm.

I.

In April 2001, William and Mary admitted Butler to the Counseling Program. For the Spring 2002 semester, Butler enrolled in a course entitled "EDC42, Practicum in Counseling" (the "Practicum"), an off-campus course taught by Dr. Teri B. Ancellotti and designed to provide students with their first client contact in a closely-supervised setting. As part of the Practicum, students were asked to find a site where they could conduct videotaped counseling sessions. Butler performed the Practicum at the Prevention Services Department of the Newport News Colonial Services Board ("CSB"), where she was supervised by CSB employee Amber Bodner.

Upon hearing from Butler's doctoral supervisor, Mr. Denny Frank, of possible problems with Butler's Practicum, Dr. Ancellotti contacted Bodner. Bodner informed Dr. Ancellotti that CSB was only a prevention site and that she had made clear to Butler that no counseling occurred there. Bodner further noted that CSB emphasized to Butler that no videotaping would be permitted at CSB.[1] In addition, Bodner told Dr. Ancellotti that Butler inappropriately "promot[ed] herself as an individual counselor with professional experience" and told a client to meet with her secretly for individual counseling. According to Bodner, Butler also told the client that she might lose custody of her children if she disclosed anything to the CSB counselors. Bodner informed Ancellotti that CSB would have problems working with Butler in the future.

On February 7, 2002, Dr. Ancellotti and Mr. Frank met with Butler to discuss their concerns, among them that Butler had been deceitful in obtaining approval of her Practicum site and the allegations of misconduct. They discussed Bodner's accusations, which Butler denied. Butler stated that others at CSB could substantiate her version of the events regarding the Practicum, but Dr. Ancellotti and Mr. Frank did not call those individuals.

On February 11, 2002, the Counseling Program faculty, including Dr. Ancellotti and Mr. Frank, met to discuss Butler's Practicum.

---

[1]Butler told CSB that she and William and Mary had "worked out" the videotaping issue.

4

At that meeting, the faculty decided to remove Butler from the Practicum and subject her to certain conditions required for her continuation in the Counseling Program. Butler was subsequently informed of this decision and given a written memorandum outlining the conditions required by the faculty. Butler was required to, *inter alia*, maintain an acceptable rating (level 3 out of 5) on her "Professional/Personal Performance Criteria" review, a student evaluation system in which Program faculty evaluate students on semester review forms (hereinafter "Semester Review"). In addition, Butler was required to meet with her faculty advisor monthly to discuss her progress. During this period, Dr. Ancellotti and Mr. Frank also submitted allegations of ethical and legal misconduct against Butler based on the same Practicum circumstances to the School of Education Honor Council. Butler was ultimately acquitted of all the charges before the Honor Council.

In early April, 2002 Butler was informed that she had received three sub-par Semester Reviews. Each review rated Butler below the acceptable level and provided the reasoning behind the ratings. Faculty members noted, among other things, that Butler "accosted," "threatened," and "stalked" other students and members of the faculty--making both her fellow students and faculty members scared and uncomfortable. Butler was provided copies of these reviews on April 15, 2002.

In late April 2002, the Program faculty met to discuss Butler's status and unanimously recommended to Tom Ward, the Associate Dean of the William and Mary School of Education, that Butler be expelled from the program. Dean Ward reviewed the recommendation and agreed with it. He then asked Virginia McLaughlin, Dean of the School of Education, to review his decision. Butler was told on May, 2, 2002, that the faculty recommended that she be removed from the program.

On May 14, 2002, Dean McLaughlin met with Butler to discuss the faculty recommendation. Butler acknowledges that, at this meeting, she was given an opportunity to tell her side of the story and present evidence in support of her desire and fitness to remain in the program. After considering the evidence, Dean McLaughlin upheld the decision to remove Butler from the program. Butler was informed of that decision in writing on May 21st, 2004.

Subsequently, Butler filed the present action under 42 U.S.C. § 1983, alleging that William and Mary violated her substantive and procedural due process rights by expelling her. She also claimed that her expulsion amounted to a breach of contract and tortious interference with contract under Virginia law.

The case proceeded to trial on August 21, 2002. At the close of Butler's evidence, William and Mary moved for judgment as a matter of law on all claims pursuant to Federal Rule of Civil Procedure 50(a). The trial court granted the motion and Butler timely appeals.

II.

The district court should grant a Rule 50(a) motion for judgment as a matter of law only if the nonmoving party has been fully heard and, viewing the evidence presented in the light most favorable to the nonmoving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1); Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994). We review the district court's decision *de novo*. Brown, 18 F.3d at 248.

A.

The Due Process Clause of the Fourteenth Amendment to the Constitution protects life, liberty, and property interests from arbitrary government action. Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993). We assume for purposes of this appeal that Butler has a property interest in continued enrollment in the Program that is protected by the Due Process Clause. See Tigrett v. Rector and Board of Visitors of the Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002) (noting that the Supreme Court and the Fourth Circuit have made this assumption). We are nevertheless mindful of the deference courts traditionally accord academic decision-making. See id. at 629-30.

7

In order to establish a substantive Due Process violation, Butler must demonstrate that William and Mary's actions in expelling her were so arbitrary and egregious as to "shock the conscience." See Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); see also Dunn v. Fairfield Community High School Dist. No. 225, 158 F.3d 962, 965 (7th Cir. 1998). Butler's claim does not meet this standard.

Butler relies heavily on the fact that she was "exonerated" by the Honor Council of charges stemming from the same allegations for which she was subsequently expelled to argue that the faculty conduct was "arbitrary" and "egregious." Butler contends that "the College is bound by the determination of the Honor Council proceedings," or that, at the very least, a reasonable jury could conclude that the Program faculty were so bound. Appellant's Brief at 32. Fatal to Butler's argument, however, is her failure to produce evidence that demonstrates any relevant institutional connection between the student-run Honor Council proceedings and the faculty-imposed remedial action plan applied to her. No reasonable jury could find, based on the evidence Butler presented, that the Program faculty were bound by, or even connected to, the Honor Council exoneration. The two processes were independent.

The School of Education faculty decided to subject Butler to remedial actions after considering allegations that she had been deceitful in obtaining approval of her Practicum site and that she engaged in misconduct at that site. Following three independent

8

semester evaluations, student input, additional faculty consideration, and an opportunity for input from Butler, the faculty, Assistant Dean, and Program Dean all agreed to expel Butler from the Program.

Butler has not persuaded us that the behavior described above "shocks the conscience" or otherwise rises to the level of a substantive due process violation. On the contrary, it appears well within the bounds of constitutionally acceptable behavior. Accordingly, we affirm the district court's dismissal of Butler's substantive Due Process claim.

In addition to substantive due process guarantees, the Due Process Clause also required William and Mary to provide Butler with certain procedural protection before expelling her from the Program.[2] As discussed below, William and Mary's actions in this case meet that constitutional burden.

"At a minimum, the Constitution requires notice and some opportunity to be heard." Mallette v. Arlington County Employees' Supplemental Retirement System II, 91 F.3d 630, 640 (4th Cir. 1996) (citing Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 178 (1951)). "Above that threshold, due process . . . is 'flexible

---

[2]We assume for purposes of this appeal, but need not decide, that Butler's expulsion was for disciplinary and not academic reasons. Disciplinary dismissals require greater procedural safeguards than academic dismissals. See Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 74 (4th Cir. 1983). It is unnecessary to reach this issue because we conclude that William and Mary's conduct satisfies even the more exacting standard.

9

and calls for such procedural protections as the particular situation demands.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "The nature of the notice and the quality of the hearing are determined by the competing interests involved." Richardson v. Town of Eastover, 922 F.2d 1152, 1159 (4th Cir. 1991).

Keeping this flexibility in mind, we view the procedural due process given to Butler through the three factor balancing test that the Supreme Court discussed in Matthews v. Eldridge, 424 U.S. 319, 335 (1976). Specifically, we balance

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mallette, 91 F.3d at 640 (quoting Matthews, 424 U.S. at 335).

We note initially that William and Mary certainly provided Butler with the rudiments of procedural due process--notice and an opportunity to be heard. William and Mary informed Butler of the most serious charges and complaints against her and provided her with an opportunity to respond. She was given written copies of the most serious charges against her. Additionally, she was given notice of the most grievous punishment--expulsion--12 days before she met with Dean Laughlin to respond. At that meeting she not only disputed evidence against her, but also provided her own evidence

10

arguing that she should not be expelled from the program. Only after considering that evidence, along with the unanimous recommendation of the faculty as well as Associate Dean Ward, did Dean McLaughlin decide to expel Butler.

Considering these facts in light of the Matthews test, we hold that Butler received the requisite constitutional procedural due process. Butler's interest in remaining in graduate school is unquestionably high. However, William and Mary's interest in controlling the integrity of its graduate programs is also high. Accordingly, this case hinges on the second Matthews factor: "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Matthews, 424 U.S. at 335.

Butler has not demonstrated how additional procedural process would have helped her in this case. Counsel for Butler at oral argument suggested that a trial-like proceeding, with the attendant right to call and cross-examine witnesses, should have been afforded. However, we find no basis in the law, nor does Butler provide one, for importing such a requirement into the academic context.

Butler was given notice and an opportunity to respond to all charges against her. She does not claim that she had evidence which she was not able to present because of a lack of procedural safeguards. She argues that William and Mary was wrong to believe

11

the charges against her and not believe her.  But that argument, even if true, does not rise to the level of a procedural due process violation.

Therefore, because Butler was afforded substantial process, and because she cannot demonstrate any probative value that additional process would have provided, she has not made her claim for a violation of procedural due process.  We affirm the district court's dismissal of her procedural due process claim.


B.

Finally, Butler contends that the district court erred in dismissing her breach of contract and tortious interference with contract claims against William and Mary.  Specifically, she contends that a reasonable jury could conclude that William and Mary breached a contract with her by expelling her after the Honor Council refused to punish her.  We disagree.

Assuming that William and Mary had a contract with Butler, it did not breach that contract by expelling her after the Honor Council refused to punish her.  As discussed previously, the Honor Council and the Program faculty serve two separate and distinct functions, and Butler has presented no evidence demonstrating that the Program was bound by the Honor Council decision.  Butler also has not presented evidence demonstrating that, by expelling her in the manner that it did, William and Mary breached an express or

12

implied promise to Butler.  In short, Butler's breach of contract claim is legally and factually baseless.  Because tortious interference with contract under Virginia law requires a breach of contract, Butler's tortious interference claim also fails.  See Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985).

III.

Viewing the evidence presented at trial in the light most favorable to Butler, we hold that, as a matter of law, there is no legally sufficient evidentiary basis through which a reasonable jury could have found for Butler on her due process or contractual claims.  Accordingly, we hold that the district court did not err in granting William and Mary's Rule 50(a) motion.

AFFIRMED

GREGORY, Circuit Judge, concurring in the judgment:

Victoria Butler ("Ms. Butler") received the appropriate due process because the College of William and Mary followed the procedures outlined in both the Honor Code and the Counseling Program handbooks. For this reason, I concur in the judgment to affirm the district court.

Ms. Butler has alleged that the College of William and Mary breached its contract with her by not affording her the proper procedure when she was expelled from the Counseling Program. She claims that her expulsion was for "disciplinary" reasons stemming from her failed Practicum site, where she was accused of lying. Ms. Butler argues that if she had not been accused of lying she would not have been expelled. Ms. Butler believes that because she was ultimately acquitted of the Honor Code[1] charges related to her Practicum, the Counseling Program faculty should be foreclosed from using the same conduct as the basis for her expulsion. In the alternative, Ms. Butler contends that she was at least entitled to another hearing.

---

[1]The College of William and Mary's Honor Council, which enforces the Honor Code, is a completely student run process that has jurisdiction over charges of lying, cheating, or stealing. Those accused of an Honor Code violation are granted trial-like procedures with a list of rights, including: a right to receive written notice of the charges against her, the right to have another willing student act as her student counsel, and the right to have silent legal counsel present.

14

In early Spring semester 2002, Dr. Teri Ancellotti, a member of the Counseling Program faculty, became aware of problems that Ms. Butler was having at her Practicum site. After contacting the supervisor at the Practicum site, Dr. Ancelotti and Ms. Butler's doctoral student advisor, Mr. Frank, called Ms. Butler in for an "information-gathering meeting" to discuss their concerns that Ms. Butler had been deceitful in obtaining approval for her Practicum site and that she had been behaving unprofessionally at the site. The meeting was followed by a series of remedial procedures which are outlined in the Counseling Program student handbook. A few days after speaking with Ms. Butler about the problems at the site, Dr. Ancellotti and Mr. Frank reported Ms. Butler to the Honor Council based upon the same facts that gave rise to the remedial actions occurring in the Counseling Program.

Ms. Butler was charged with five separate counts of lying at her Practicum site and was given an Honor Council hearing to address those charges. The Honor Council found her guilty of two counts of lying. Ms. Butler appealed. Professor John E. Donaldson, Provost's designee to review appeals, reviewed the entire complaint and found that the Honor Council lacked jurisdiction in four of the five counts of lying. He also found that there was insufficient evidence to establish guilt beyond a reasonable doubt on the remaining count. Professor Donaldson's findings vacated the Honor Council's findings of guilt and acquitted Ms. Butler of all Honor Code charges.

However, the Honor Council proceedings were separate and a part from the remedial procedures implemented by the Counseling Program faculty.  The Counseling Program has a student handbook, to which Ms. Butler must also adhere.[2]  The handbook provides in relevant part:

> Students are expected [to] conduct themselves in an <u>ethical</u>, responsible and <u>professional</u> manner.
>
> . . . .
>
> As counselor educators, the faculty expect prospective counselors to be concerned about other people, to be stable and psychologically well adjusted, . . . and to be able to receive and give constructive feedback.
>
> . . . .
>
> Therefore, the faculty believe part of their responsibility to the student, the profession and the eventual consumers of counseling services provided by William and Mary graduates, is <u>to monitor not only students' academic progress but also those personal characteristics which will affect their performance in the field</u>.  The purposes of this monitoring process is that William & Mary graduates possess these characteristics sufficiently so that they do NOT interfere with their professionalism or helping capacity.

J.A. 555 (emphasis added).

According to the Counseling Program handbook, all Counseling Program students are reviewed each semester by the faculty for compliance with the non-academic professional performance standards. The non-academic professional performance standards include

_____

[2]Ms. Butler testified that she received the Counseling Program student handbook in the fall 2001 and read and understood the handbook. J.A. 73, 129.

16

"attention to ethical and legal considerations."[3]  J.A. 556.  Based on the handbook, detailed _infra_, the Counseling Program faculty designated certain personal characteristics that are directly linked to the academic program and the profession, which are to be monitored by the faculty.  The faculty support the monitoring and remedial procedure instituted by articulating how these particular personal characteristics are integral to a student becoming a competent counselor.  Ms. Butler's contention that the Counseling Program faculty is bound by the proceedings before the Honor Council is meritless -- they are distinct entities.

The Counseling Program handbook provides the following procedure if a student does not receive a passing rating under the performance standards:

> Each standard is rated on a 1 (poor) to 5 (excellent) scale.  The results of the review are recorded on each student's Semester Review Form . . . . [s]tudents receiving a rating of 2 or below on the non-academic, professional performance standards will be subject to the following procedure:
>
> 1. The student is presented in writing with a copy of the review form and the professor's comments. A copy of the form is also given to the full faculty and discussed in the next student review meeting.  After the faculty discussion, the student and the professor will also meet to discuss the form and any recommended remediation deemed appropriate.
>
> 2. If a student receives more than one review form during any one semester OR receives a review form from more than

---

[3]Incidents of lying related to the counseling profession bring into question a student's "attention to ethical and legal considerations" as well as implicate violations of the Honor Code.

17

one professor during his/her program, the student will be required to meet with his or her advisor and the faculty member(s) issuing the forms to discuss remediation or possible reconsideration of his/her continuation in the program. A copy of the forms and any action taken will be given to the student and placed in the student's file.

3. If a student receives three review forms or more, the student will be required to meet with [sic] his/her advisor and the faculty members issuing the forms to discuss reconsideration of continuation in the program. If the faculty determines that the student's personal or professional behavior is inappropriate to the field of counseling, and that such behaviors would be a detriment in working with others, the denial [of] continuance in the program will be recommended to the Associate Dean.

Policies for review of student during Practicum and Internship include the above criteria and procedures as well as additional criteria appropriate to the clinical experience.

J.A. 556.

As stated, Dr. Ancellotti and Mr. Frank, met with Ms. Butler, in the early part of the Spring Semester, to discuss their concerns that Ms. Butler had engaged in professionally unacceptable behavior with clients at her Practicum site. Following that discussion, Ms. Butler received her first unsatisfactory Semester Review based on the problems at her Practicum site. Ms. Butler also received a letter from the faculty regarding her failed Practicum, which included several different issues regarding Ms. Butler's personal characteristics and how they affected her professionalism. The letter included professional determinations by the faculty that: she gave inaccurate information to clients, attempted to provide individual private-home counseling services without supervision,

18

"knowingly present[ed] false information about the field site that was critical to the site approval process," and that she "contradicted specific directives by the Practicum faculty and supervisor to cease activities at the field site." J.A. 653. The faculty's concerns are directly related to Ms. Butler's lack of attention to ethical and legal considerations -- one of the Counseling Program's professional performance standards. Ms. Butler's continuance in the program was contingent on her receiving a rating of level 3 or higher for her professional personal performance criteria and on following the other directives in the remedial plan. Thereafter, Ms. Butler met monthly with her advisor to chart her progress.

Approximately a month later, Ms. Butler's advisor informed her that she had received two more unsatisfactory Semester Reviews from faculty -- rating her at a level 1 on several professional performance standards.[4] The Counseling Program Student handbook expressly provides that receiving three unsatisfactory Semester Reviews could result in expulsion. After Ms. Butler received her final two unsatisfactory Semester Reviews she met with faculty members about them. Subsequently, the Counseling Program faculty

---

[4]Specifically, the Semester Reviews rated Ms. Butler at a level 1 -- for cooperativeness with others, willingness to accept and use feedback, awareness of own impact on others, ability to deal with conflict, ability to accept personal responsibility, and ability to express feelings effectively and appropriately. J.A. 659-664.

convened as a whole and recommended to the Associate Dean of the School of Education that she be dismissed.

The Associate Dean reviewed Ms. Butler's record and elected to follow the faculty's recommendation. At the Associate Dean's request, the Dean of the School of Education reviewed that decision. Before making a final decision, the Dean met with Ms. Butler to give her the opportunity to respond to the faculty's evaluations and recommendation. Ultimately, the Dean accepted the faculty's recommendation and the Associate Dean's decision and dismissed Ms. Butler. It was only after all of these steps, in direct compliance with the Counseling Program handbook, was Ms. Butler denied continued enrollment.

The faculty followed the criteria and procedure outlined in Counseling Program handbook and afforded Ms. Butler sufficient opportunities to meet the requirements of the Program. Based on the particular facts of this case, Ms. Butler received the prescribed due process. Because Ms. Butler was afforded the proper due process and William and Mary adhered to both the Honor Code and to the Counseling Program handbooks, the district court was correct -- there was insufficient evidence to support Ms. Butler's claim for breach of contract or tortious interference with a contract. For the reasons stated herein, I would affirm the district court.