Tom JARMAN & Shirley Jarman, as parents & next friends of Mark & Melissa Jarman; Jan & Mike Blatchley, as parents & next friends of Michelle Blatchley; Jan & Alvis Morris, as parents & next friends of Patrick, Kelly, Terry, & Matt Morris; Edith Simmons, as parent & next friend of Edie, Lisa, Ronnie & Mike Simmons; Willard & Kay Garrett, as parents & next friends of Jana Garrett; Nada & Ferdinand Halter, as parents & next friends of David, Rita & Becky Halter, Appellants,

v.

Howard WILLIAMS, Freddie Fowlkes, Barbara Weaver, Charles McWilliams, Wayne Mitchell, Ronnie Shumate, and Ronnie Kelley, individually & in their official capacities as members of the Board of Education of the Vilonia School District; and James Hardage, Superintendent of the Vilonia School District, Appellees.

No. 84–1337.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1984.

Decided Jan. 21, 1985.

Philip E. Kaplan, Peter A. Miller, Karen L. Arndt, Kaplan, Brewer & Miller, P.A., Little Rock, Ark., for appellants.

William C. Brazil, Charles E. Clawson, Jr., Brazil, Clawson & Adlong, Conway, Ark., for appellees.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

The question presented is whether the First Amendment compels the Vilonia School District No. 17 of Faulkner County, Arkansas, to rent a school gymnasium to a

group of parents who wish to hold dances for high-school students. The plaintiffs contend that dancing is a form of expression protected by the First Amendment, that a policy adopted by the school board in 1980 makes school property a public forum for the exercise of First Amendment rights, and that the school is therefore constitutionally obliged to rent its property to those who wish to hold dances.

The District Court[1] held that the gymnasium had never become a public forum and denied relief. We affirm. We hold that social or recreational dancing is not, in the circumstances of this case, entitled to First Amendment protection, and that, even if social or recreational dancing were "speech" within the meaning of the First Amendment, plaintiffs would still not be entitled to relief, because the finding of the District Court that the gymnasium has not become a public forum is not clearly erroneous.

### I.

Plaintiffs are a group of parents of school children attending schools managed by the Vilonia School District No. 17 of Faulkner County, Arkansas. The School District sponsors one dance in the school gymnasium each year: the senior and junior prom. Plaintiffs wanted the School District to hold more dances for students. The school board denied requests to increase the number of school-sponsored dances. The plaintiffs then proposed to rent the gymnasium for purposes of holding other dances from time to time. Although the school board has a policy permitting rental of school facilities to civic organizations and school-related groups, and has allowed some groups to use the school facilities, it denied plaintiffs' request. Plaintiffs believe that the school board's refusal was based upon pressure from religious sectors of the community which believe that dancing is immoral and should not be permitted in public schools. Plaintiffs brought suit alleging that the refusal to rent the gymnasium for the purpose of holding more dances violated their First Amendment rights and deprived them of the equal protection of the laws.

The First Amendment provides, in pertinent part, that "Congress shall make no law abridging the freedom of speech ...." The Supreme Court has long ago extended this prohibition to the states and their political subdivisions, through the medium of the Due Process Clause of the Fourteenth Amendment. The theory of plaintiffs' complaint is that social or recreational dancing is a form of expression coming within the term "speech" as that term is used in the First Amendment.

Obviously not every activity that a citizen wishes to engage in can be categorized as "speech" for First Amendment purposes. It is plaintiffs' obligation to demonstrate that the First Amendment applies to the conduct in which they wish to engage. "To hold otherwise would be to create a rule that all conduct is presumptively expressive." *Clark v. Community for Creative Non-Violence*, —— U.S. ——, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221 (1984). The Amendment presupposes that "speech" has a privileged constitutional position, one not accorded to conduct generally. That is, when government seeks to prohibit or regulate "speech," it must meet a much higher standard than when it simply prohibits or regulates conduct in the exercise of the power to promote the public health, welfare, or morals. Certainly some forms of dancing are entitled to First Amendment protection. See, *e.g., Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981), concerning dancing before audiences as a performance or an art form. The sort of dancing involved here is quite different.

---

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

78

The plaintiffs simply want their children to have the opportunity to dance for social or recreational purposes, for their own edification, and not for the enjoyment of an audience. The dancing here is not claimed to involve any political or ideological expression. It is not intended to convey any kind of message, unless it be the message that the plaintiffs do not believe that dancing is wrong. In these circumstances, it is our view that conduct as opposed to speech is involved.

■ When conduct conveys a message, that is, when it is expressive, it may be entitled to a measure of First Amendment protection.[2] See *International Brotherhood of Teamsters, Local 695 v. Vogt, Inc.,* 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957), in which picketing, which is conduct designed to convey a certain message, was characterized as "speech plus" and accorded some First Amendment protection. Similarly, in *Gay Students Organization v. Bonner,* 509 F.2d 652 (1st Cir.1974), the University of New Hampshire prohibited the Gay Students Organization (GSO) from holding any social functions (including dances) on campus. The First Circuit held that the GSO's social events, which were efforts to organize the homosexual minority and educate the public as to its plight, conveyed an ideological message. "Certainly GSO social functions do not constitute 'pure speech,' but conduct may have a communicative content sufficient to bring it within the ambit of the First Amend-

ment." *Id.* at 660 (footnotes omitted). The fact that the GSO alone was subject to the regulation indicated that the ban was content-based and therefore impermissible. *Id.* at 661. The social dancing involved here is quite different, because it is not designed to convey any particular idea.

Certainly the First Amendment must have preeminence. It is phrased in absolute terms ("Congress shall make no law ..."), and, although the Supreme Court has held that First Amendment rights are not absolute, and that they may in appropriate cases be overridden by "compelling" state interests, still speech, as that term is used in the First Amendment, has a preferred position in our constitutional scheme. The courts must be alert both to preserve this preferred position, and to confine it to the area intended by the Framers of the Bill of Rights. If any sort of conduct that people wish to engage in is to be considered "speech" simply because those who engage in conduct are, in one sense, necessarily expressing their approval of it, the line between "speech" protected by the First Amendment and conduct not so protected will be destroyed. We decline to adopt such a view. In short, we hold that the sort of dancing that plaintiffs advocate in this case is not "speech" under the First Amendment, and therefore that the First Amendment has not been violated by the refusal of the school board to allow its property to be used for this sort of dancing.[3]

2. Even when conduct does have some expressive element, it does not *ipso facto* become "speech" for all purposes. The Supreme Court has stated that it "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

3. There is some indication in the record that the school board may have refused to rent the gymnasium for dancing because some members of the board, or some people in the community, believe that dancing which involves physical contact between the sexes is immoral or irreligious. We do not understand the plaintiffs to

be arguing on appeal that the Religion Clauses of the First Amendment are violated here, and we express no view on the merits of any such proposition. That is, plaintiffs do not contend that the school board's refusal to allow dancing on school premises (beyond the senior and junior prom already mentioned) is an establishment of the religious views of those who oppose dancing on moral or religious grounds. Nor do plaintiffs contend that the prohibition of the dancing desired by plaintiffs here infringes plaintiffs' free exercise of religion. The entire premise of the appeal is that the dancing favored by plaintiffs is "speech." Only if this proposition is accepted does the public-forum argument urged by plaintiffs become relevant.

## II.

Even if the sort of dancing involved in this case were "speech" within the meaning of the First Amendment, plaintiffs could still not succeed unless they establish that school property has become a public forum, in which the school board is constitutionally obliged to permit any form of protected expression. The District Court found as a fact that the school property had not become a public forum. The plaintiffs contend that this finding is clearly erroneous. Their principal reliance is upon a written policy adopted by the school board in January, 1980, entitled "Use of School Facilities." The policy provides that school facilities may be used by "civic and patriotic organizations" for a rental fee, "for purposes not necessarily related to school functions." The policy also says that school-related groups will be permitted the free use of the facilities.

If this policy were the only relevant evidence in the record with respect to the question whether a public forum had been created, we might well agree with the plaintiffs, but it is not. The District Court focused on actual practice in addition to the written policy. It found that in fact school facilities have been used only by certain groups that seem to us to be school-related in the broad sense: karate instruction, gymnastics, piano lessons, Booster Clubs, the Boy Scouts, and the Girl Scouts. Requests by a church to use school facilities for a revival, and by someone who wanted to use the school facilities to conduct a flea market were turned down. In other words, in the view of the District Court, actual practice by the school board is more important than its written policy in determining whether a public forum has been created. This finding is not clearly erroneous.

We think this phase of the case is governed by the Supreme Court's holding in *Perry Education Ass'n v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 47, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983). There, the Court held that selective access granted to groups such as the YMCA, the Cub Scouts, and other civic and church organizations did not convert the Perry School District's mail system into a public forum. We have here the same sort of selective opening of school property, and, like the Supreme Court in *Perry*, we hold that the school board's willingness to allow the gymnasium to be used for karate, gymnastics, piano lessons, and the like, did not convert it into a public forum, so as to obligate the school board to allow the gymnasium to be used for any other purpose protected by the First Amendment. For a fuller expression of the reasons for our holding on the public-forum issue, we refer the reader to the well-reasoned opinion of the District Court.

Finally, we reject plaintiffs' claim that the school board's decision violated the Equal Protection clause. The school board was within its lawful discretion in turning down plaintiffs' rental proposal. It is not irrational to see in gymnastics, for example, an activity of greater worth to school children than dancing. (Nor, for that matter, would it be irrational for a school board to allow dancing but not gymnastics on school property.) These are matters of educational choice which, so far as the Equal Protection Clause of the Fourteenth Amendment is concerned, are left to the states, or to those local governmental bodies—here, school districts—to which states may delegate their powers. Whether we would make the same choice if we were on the school board is beside the point.

Affirmed.