Rebecca WILLIS, Plaintiff–Appellant,

v.

TOWN OF MARSHALL, NORTH CAROLINA, Defendant–Appellee.

Rebecca Willis, Plaintiff–Appellant,

v.

Town of Marshall, North Carolina, Defendant–Appellee.

Nos. 03–2252, 04–1240.

United States Court of Appeals, Fourth Circuit.

Argued: March 7, 2005.

Decided: Oct. 7, 2005.

**ARGUED:** Jonathan Drew Sasser, Ellis & Winters, L.L.P., Raleigh, North Carolina, for Appellant. Sandra Moody King, Russell & King, Asheville, North Carolina; Larry Bruce Leake, Leake & Scott, Asheville, North Carolina, for Appellee. **ON BRIEF:** Thomas H. Segars, Ellis & Winters, L.L.P., Cary, North Carolina; Marc C. Tucker, Smith Moore, L.L.P., Raleigh, North Carolina; Seth H. Jaffe, American Civil Liberties Union of North Carolina, Legal Foundation, Raleigh, North Carolina, for Appellant.

Before WILKINS, Chief Judge, and WILLIAMS and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge TRAXLER wrote the opinion, in which Chief Judge WILKINS joined. Judge WILLIAMS wrote a separate opinion concurring in part and concurring in the judgment.

## OPINION

TRAXLER, Circuit Judge:

The Town of Marshall, North Carolina, hosts regular Friday-night concerts and community gatherings at the Marshall Depot, the Town's community center. Rebecca Willis enjoyed attending the Friday-night gatherings and dancing to the music

provided by the local bands. Willis's unorthodox dancing style, however, led to complaints about her to the committee in charge of the Depot events. As a result of these complaints, the Town banned Willis from the Depot. Willis ultimately filed this § 1983 suit in federal district court. Willis asserted a host of constitutional claims springing from the Town's decision to ban her from the Depot and sought a preliminary injunction requiring the Town to re-admit her to Depot events. The district court denied Willis's motion for a preliminary injunction. Thereafter, the court granted summary judgment in favor of the Town, concluding that Willis's dancing was not constitutionally protected. Willis appeals. As we explain below, we affirm in part, vacate in part, and remand for further proceedings.

## I.

### A.

In the center of the Town of Marshall is the Marshall Depot, a former railroad depot leased by the Town for use as a community center. A committee appointed by the Town's Board of Aldermen coordinates events at the Depot. On Friday nights the Town opens the Depot and sponsors musical entertainment, permitting local groups to sign up for playing time. The Friday night concerts are for the benefit of the public and are attended by community members of all ages. During the Friday night concerts, the musicians perform on a stage, which is located in front of rows of auditorium-style seats where people can sit and listen to the music. There is no real dance floor in the Depot, but there is small area off to the side of the stage and seating area where people often dance.

Posted on the back wall of the Depot is a list of the Depot's "Rules of Behavior," which state:

(1) No Drinking (Alcoholic Beverages);

(2) No Smoking;

(3) Shoes and Shirts Required;

(4) No Sitting on Rails;

(5) No Blocking Doors;

(6) No Cases or Instruments Left on Deck;

(7) No Jamming Inside Depot or on Deck;

(8) No Unsupervised Children Allowed to Run Loose Around Building; and

(9) No Soliciting.

J.A. 81. There are no other posted rules or regulations regarding dress or appropriate behavior at the Depot.

Willis lives in Madison County, North Carolina, just outside the boundaries of Marshall. She regularly attended the Friday night concerts, where she particularly enjoyed dancing. According to the Town's evidence, Willis danced in a sexually provocative manner—gyrating and simulating sexual intercourse with her partner while "hunch[ed]" on the floor. J.A. 47, 49. The Town's evidence indicates that Willis wore very short skirts and would frequently bend over while dancing, exposing her underwear, her buttocks, and her "privates." J.A. 50.

Community members were concerned about their children being exposed to Willis's dancing, and a number of them complained to members of the Depot Committee. The Town contends that members of the Depot Committee repeatedly spoke to Willis about her dancing and asked her to "please curtail the provocativeness of her dances." J.A. 56. These requests were allegedly met with defiance. The Town says that rather than toning down her dancing, Willis began to dance even more provocatively.

Willis takes issue with the Town's view of the facts. Willis describes her style of

dance as "exuberant[ ] and flamboyant[ ]," J.A. 9, but not inappropriate in any way.[1] Willis acknowledges that she wore short skirts to the Depot, but she contends that she always wore underwear and pantyhose and thus could not have exposed her "privates." According to Willis, only one of the Depot Committee members once told her to "cool it" after Willis clogged her way through a cake walk, but the committee member later that night told Willis that she had been joking.

In any event, the Depot Committee ultimately decided to ban Willis from attending events at the Depot. This decision was conveyed to Willis by way of a letter from the Town's mayor. The letter, dated December 12, 2000, stated: "Due to the inappropriate behavior exhibited by you and having received previous warnings from the Marshall Depot Committee it is the consensus of the Committee that you are banned from the Marshall Depot. This action is effective as of today's date." J.A. 39.

After receiving the banishment letter, Willis contacted an attorney. Her attorney conveyed to the Board Willis's willingness to apologize for any inadvertent displays of her underwear and to abide by any dress code that the Board might adopt if the Board would permit her to return to the Depot. The Board declined to lift the banishment, and this action followed.

### B.

In her complaint, Willis alleged that the Town violated her substantive due process rights by permanently banishing Willis from a public forum; that the Town violated her First Amendment rights of free expression, of association, and to receive

information by banning her from the Depot; that the Town deprived Willis of a liberty interest without affording her adequate procedural protections; that the authority upon which the Town relied to banish Willis was unconstitutionally vague and overbroad; and that the Town denied her equal protection of the law by singling out Willis for banishment. Willis also sought entry of a preliminary injunction requiring the Town to permit her to return to the Depot. The Town filed a motion to dismiss, and the matter was referred to a magistrate judge for a report and recommendation.

The magistrate judge recommended that the motion to dismiss be denied except as to Willis's claim that her associational rights were violated. The magistrate judge also recommended that Willis's motion for a preliminary injunction be granted. The Town objected to the magistrate judge's report and recommendation.

The district court considered the Town's objections and entered an order denying the motion for a preliminary injunction. And while the Town had yet to file an answer and no discovery had been ordered, the district court directed that the Town's motion to dismiss would be converted to a motion for summary judgment. The court gave the parties thirty days to file any additional materials relevant to consideration of the summary judgment question.

Thirty days after the district court's order converting the motion to dismiss to a motion for summary judgment, the Town submitted a memorandum in support of the granting of summary judgment, along with an additional batch of affidavits. That same day, Willis filed her memorandum opposing summary judgment, along

---

1. In her brief, Willis states that she danced no "more provocatively than Elvis Presley, whose gyrations worried Ed Sullivan about the potential unraveling of the moral fabric of 1956 society." Brief of Appellant at 38.

with additional affidavits and exhibits. Willis also submitted an affidavit under Rule 56(f) of the Federal Rules of Civil Procedure, alleging summary judgment was premature because she did not have the opportunity to seek discovery on her claims. The affidavit sufficiently informed the district court of the discovery Willis needed to oppose the motion for summary judgment.

The district court thereafter granted summary judgment in favor of the town. The court concluded that Willis's recreational dancing did not amount to speech and thus was not constitutionally protected, a conclusion that the district court believed defeated Willis's free speech and association claims as well as her vagueness and overbreadth claims. To the extent that Willis had a First Amendment right to receive information provided during the Depot events, the district court concluded that the Town's decision to ban Willis because of her conduct and attire was a reasonable regulation of conduct unrelated to her right to receive information.

As to Willis's substantive due process claim, the district court concluded that Willis had no protected liberty interest "to be present on all property owned by the government." J.A. 217. The court also concluded that because the Town's actions did not deprive Willis of any constitutionally protected right, her procedural due process claim necessarily failed. Alternatively, the court concluded that Willis had an opportunity to appeal the Depot Committee's decision to the Board of Aldermen, which the court believed to be sufficient to satisfy the requirements of due process. The court rejected Willis's Equal Protection claim by noting that there was no evidence of similarly situated persons who were treated more favorably by the Town. As to Willis's Rule 56(f) motion for additional discovery, the district court concluded that because the evidence presented established that the Town "had a rational basis for all of its challenged actions, further discovery in this case would be fruitless." J.A. 221.

## II.

Willis appeals, challenging the district court's denial of her motion for a preliminary injunction as well as the court's order granting summary judgment to the Town. She contends that the district court erred by granting summary judgment in favor of the Town. Willis argues that there are genuine issues of material fact that preclude the granting of summary judgment in favor of the Town on each of the claims she has asserted and that the district court impermissibly relied on the Town's version of disputed facts to reach its decision.

Willis brings this action under 42 U.S.C.A. § 1983 (West 2003). Accordingly, she must establish that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). The Town argued below that the actions of the Depot committee did not amount to state action sufficient to support a § 1983 claim, but the district court concluded that there were questions of fact as to that issue that could not be resolved at summary judgment. The Town does not press the state action issue on appeal, so we do not consider it. Instead, we focus on whether Willis has presented evidence sufficient to show the violation of any constitutional rights.

## III.

We first consider Willis's claim that the Town violated her First Amendment rights.

## A.

The threshold question in any First Amendment challenge, of course, is whether any protected First Amendment right is involved. If the answer to that question is no, then "we need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Willis contends that the kind of dancing she engaged in at the Depot is expressive conduct protected by the First Amendment. The district court rejected that argument, as do we.

■ It is well established that the First Amendment protects expressive conduct as well as pure speech. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("[W]e have long recognized that [the First Amendment's] protection does not end at the spoken or written word.... [C]onduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." (internal quotation marks omitted)). There is no doubt that, under some circumstances, dancing will amount to expressive conduct protected by the First Amendment. For example, most forms of dance, whether ballet or striptease, when performed for the benefit of an audience, are considered expressive conduct protected by the First Amendment. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002) ("The Constitution protects not just political and ideological speech, but also live entertainment, including nude dancing and other performances involving nudity or other sexual elements." (internal quotation marks omitted)); *id.* at 516 (characterizing ballet, jazz, and flamenco dance as falling within the "heartland of the First Amendment's protection" (internal quotation marks and alterations omitted)); *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 389 (4th Cir.1993) ("First Amendment principles governing live entertainment are relatively clear: short of obscenity, it is generally protected."). Willis, however, was not a performer in any meaningful sense—she was simply dancing for her own enjoyment. The question, then, is whether this kind of social or recreational dancing is entitled to First Amendment protection.

■ This court has stated that "recreational dancing, although containing a 'kernel' of expression, is not conduct which is sufficiently communicative to bring it within the protection of the First Amendment," *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 144 (4th Cir.1991), a conclusion that seems to foreclose Willis's argument to the contrary. Willis, however, notes that when stating that recreational dancing was not protected, the *D.G. Restaurant* court relied on the Supreme Court's decision in *Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). According to Willis, *Stanglin* did not hold that recreational or social dancing was not protected speech, and she therefore contends that we are not bound by *D.G. Restaurant's* incorrect recitation of the *Stanglin* holding. We disagree. Although the Court in *Stanglin* did not expressly state that recreational dancing was not protected by the First Amendment, the analysis and holding of the *Stanglin* court make such a conclusion inescapable.

*Stanglin* involved a First Amendment challenge to an ordinance that restricted admission to certain dance halls to persons between the ages of 14 and 18. The owner of a dance hall affected by the ordinance argued that the ordinance violated his customers' First Amendment associational rights by prohibiting them from associating with those over 18. *See Stanglin*, 490 U.S. at 22–24, 109 S.Ct. 1591.

The Supreme Court has recognized a constitutionally-protected right of association in two separate lines of cases:

> In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The *Stanglin* Court summarily concluded that the dance-hall patrons "are not engaged in the sort of intimate human relationships" that give rise to the first kind of associational rights. *Stanglin*, 490 U.S. at 24, 109 S.Ct. 1591 (internal quotation marks omitted). The Court likewise rejected the argument that the patrons were engaged in expressive activity giving rise to the second form of associational rights:

> The Dallas ordinance restricts attendance at Class E dance halls to minors between the ages of 14 and 18 and certain excepted adults. It thus limits the minors' ability to dance with adults who may not attend, and it limits the opportunity of such adults to dance with minors. These opportunities might be described as "associational" in common parlance, but they simply do not involve the sort of expressive association that the First Amendment has been held to protect. The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment. Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee. There is no suggestion that these patrons "take positions on public questions" or perform any ... other similar activities.... The cases cited in *Roberts* recognize that "freedom of speech" means more than simply the right to talk and to write. It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment. We think the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. Thus this activity qualifies neither as a form of "intimate association" nor as a form of "expressive association" as those terms were described in *Roberts*.

*Id.* at 24–25, 109 S.Ct. 1591.

■ By concluding that the dance-hall ordinance did not implicate the expressive associational rights of the dance-hall patrons, the Supreme Court effectively concluded that the kind of dancing at issue in *Stanglin* is not expressive activity protected by the First Amendment. As indicated above, a constitutionally protected right to associate for expressive purposes exists if the activity for which persons are associating is itself protected by the First Amendment. *See Jaycees*, 468 U.S. at 618, 104 S.Ct. 3244 ("[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, pe-

tition for the redress of grievances, and the exercise of religion."); *Cromer v. Brown*, 88 F.3d 1315, 1331 (4th Cir.1996) ("The right to associate in order to express one's views is inseparable from the right to speak freely." (internal quotation marks omitted)); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994) ("The right of expressive association ... is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms.... [A] plaintiff ... can obtain special protection for an asserted associational right if she can demonstrate ... that the purpose of the association is to engage in activities independently protected by the First Amendment."); *see also Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 443–44 (3d Cir.2000) (noting that in *Stanglin*, the Supreme Court held "that, although the patrons were associating with one another, they were not engaging in First Amendment-protected expression while doing so").

If recreational dancing were constitutionally protected activity, then the dance-hall patrons in *Stanglin* would likewise have had a constitutionally protected associational right. We therefore conclude that *Stanglin* effectively closes the door to Willis's claim that her Depot-dancing was itself constitutionally protected expressive activity.[2] *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 581, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Souter, J., concurring) (citing *Stanglin* and stating that "[t]his Court has previously categorized ballroom dancing as beyond the [First] Amendment's protection"); *D.G. Restaurant*, 953 F.2d at 144 ("[R]ecreational dancing, although containing a 'kernel' of expression, is not conduct which is sufficiently communicative to bring it within the protection of the First Amendment."); *Jarman v. Williams*, 753 F.2d 76, 78 (8th Cir.1985) ("The plaintiffs simply want their children to have the opportunity to dance for social or recreational purposes, for their own edification, and not for the enjoyment of an audience. The dancing here is not claimed to involve any political or ideological expression. It is not intended to convey any kind of message.... In these circumstances, it is our view that conduct as opposed to speech is involved.").

The Town's decision to prohibit lewd dancing at the Depot is no different from a decision permitting or prohibiting any other conduct at the Depot. Just as the Town can prohibit drinking alcohol or smoking and can require patrons to wear shoes and shirts, the Town can prohibit lewd or otherwise inappropriate dancing, all without running afoul of the First Amendment.

■■■ We recognize that there is a First Amendment issue lurking in the background of this case. "Music, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *see also Giovani Carandola, Ltd.*, 303 F.3d at 511; *IOTA XI Chapter*, 993 F.2d at 389. The live music performed at the Friday night concerts thus is a form of expression protected by the First Amendment. Although the First Amendment refers only to the right to speak, courts have long recognized that the Amendment also protects the right to receive the speech of

---

**2.** On appeal, Willis suggests that some at the Depot events viewed her dancing as part of the entertainment, such that she should be considered a performer whose dance is constitutionally protected. We disagree. In every group of recreational dancers, there likely will be some whose dancing is sufficiently good or unusual as to gain an audience among the other dancers. If that is all it took to convert recreational dancing into protected speech, it seems likely that the outcome in *Stanglin* would have been different.

others. *See First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (stating that the "First Amendment . . . afford[s] the public access to discussion, debate, and the dissemination of information and ideas"); *Martin v. City of Struthers*, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) (explaining that the First Amendment "embraces the right to distribute literature . . . and necessarily protects the right to receive it"); *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir.2003) ("The First Amendment is about more than a publisher's right to cover his costs. Indeed, it protects *both* a speaker's right to communicate information and ideas to a broad audience *and* the intended recipients' right to receive that information and those ideas."); *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1255 (3d Cir.1992) ("[T]he First Amendment does not merely prohibit the government from enacting laws that censor information, but additionally encompasses the positive right of public access to information and ideas. . . . [T]his right . . . includes the right to some level of access to a public library, the quintessential locus of the receipt of information.").

Because the musical performances at the Depot involved protected expression, it follows that Willis herself had a First Amendment right to listen to them. Admittedly, Willis's claim of a constitutional right to listen to amateur bluegrass and country music seems somewhat less compelling than, for example, the right to read a newspaper article conveying accurate information about a political candidate, *see Rossignol*, 316 F.3d at 519–21, or the right to use a public library, *see Kreimer*, 958 F.2d at 1246–50. Nonetheless, musical performances like those at the Depot are clearly a form of speech entitled to First Amendment protection. And where there is a protected right of speech, there is likewise a protected right to receive the speech. *See Lamont v. Postmaster General*, 381 U.S. 301, 308, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) (Brennan, J., concurring) ("It would be a barren marketplace of ideas that had only sellers and no buyers."); *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir.2002) (Kozinski, J., concurring) ("[T]he right to hear and the right to speak are flip sides of the same coin."). That the speech at issue in this case is more entertaining than informative does not change the analysis. *See Schad v. Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee."); *Stanley*, 394 U.S. at 564, 89 S.Ct. 1243 (explaining that the "right to receive information and ideas, regardless of their social worth . . . is fundamental to our free society.").

This lurking right to receive speech (in essence, the right to listen), however, is not sufficient to trigger First Amendment scrutiny as to the Town's lewd-dancing policy. First Amendment scrutiny applies only if there is government action that directly or at least incidentally affects a protected expressive activity. While application of the Town's policy on lewd dancing ultimately prevented Willis from exercising her right to listen, that attenuated, indirect effect on speech is insufficient to bring the First Amendment into play:

> [E]very civil and criminal remedy imposes some conceivable burden on First Amendment protected activities. One liable for a civil damages award has less money to spend on paid political announcements or to contribute to political causes, yet no one would suggest that such liability gives rise to a valid First Amendment claim. Similarly, a thief

who is sent to prison might complain that his First Amendment right to speak in public places has been infringed because of the confinement, but we have explicitly rejected a prisoner's claim to a prison environment least restrictive of his desire to speak to outsiders.

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) (citations omitted); *see id.* at 708, 106 S.Ct. 3172 (O'Connor, J., concurring) (explaining that First Amendment scrutiny should not be applied if "the government is regulating neither speech nor an incidental, nonexpressive effect of speech. Any other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment."). Because recreational dancing of the type at issue in this case is not expressive conduct protected by the First Amendment, the factual dispute about the nature of Willis's dancing is not material to her First Amendment claim. Thus, with regard to the Town's policy on lewd dancing, there simply is no First Amendment issue.

### B.

Our conclusion that recreational dancing is not protected by the First Amendment is largely dispositive of the other First Amendment claims raised by Willis.

While Willis contends that the Town's actions violated her First–Amendment associational rights, we have already explained that a constitutionally protected right to associate depends upon the existence of an activity that is itself protected by the First Amendment. *See Jaycees*, 468 U.S. at 618, 104 S.Ct. 3244; *McCabe*, 12 F.3d at 1562–63. Because Willis's dancing is not protected First Amendment activity, Willis had no protected right to associate for the purpose of dancing. We therefore need not consider Willis's associational claims further.

■ Willis also contends that the Town's lewd-dancing policy is unconstitutionally vague and overbroad. While "vagueness and overbreadth are related constitutional concepts, they are separate and distinct doctrines, subject in application to different standards and intended to achieve different purposes." *United States v. Morison*, 844 F.2d 1057, 1070 (4th Cir.1988). "The vagueness doctrine is rooted in due process principles and is basically directed at lack of sufficient clarity and precision in the statute; overbreadth, on the other hand, would invalidate a statute when it infringes on expression to a degree greater than justified by the legitimate governmental need which is the valid purpose of the statute." *Id.* (footnotes, internal quotation marks and alteration omitted).[3]

**3.** Preliminarily, we reject Willis's assertion that the Town's policy is necessarily vague because it is unwritten. Written rules and policies, of course, are preferable to the extent they are possible. However, the government as a property owner must have the flexibility to respond to disruptive situations as they arise. *See, e.g., Cornelius*, 473 U.S. at 799–800, 105 S.Ct. 3439 ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."). To require the government to operate only under written policies would unduly limit that flexibility. Accordingly, we conclude that the absence of a specific written policy, standing alone, is not sufficient to support Willis's vagueness claim. *See Families Achieving Independence & Respect v. Nebraska Dep't of Soc. Servs.*, 111 F.3d 1408, 1415 (8th Cir.1997) (en banc) (explaining that a governmental policy is not automatically "vague because it is unwritten. So long as a policy is made explicit by well-established practice, the

■ Our conclusion that dancing is not protected speech forecloses these arguments. *See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("In a facial challenge to the overbreadth ... of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." (footnotes omitted)); *id.* at 494–95, 102 S.Ct. 1186 (explaining that where policy alleged to be vague "implicates no constitutionally protected conduct," the vagueness challenge should be upheld "only if the enactment is impermissibly vague in all of its applications").[4]

Because the kind of dancing at issue here is not expressive conduct, the Town's regulation of it does not implicate the First Amendment and any further review of the Town's action must be undertaken under a different provision of the Constitution. *See Neinast v. Board of Trustees,* 346 F.3d 585, 592 (6th Cir.2003) (concluding that conduct regulations adopted by public library did not directly regulate speech and thus did not implicate the First Amendment and were subject only to rational-basis review under other provisions of the Constitution), *cert. denied,* 541 U.S. 990, 124 S.Ct. 2040, 158 L.Ed.2d 495 (2004); *see also Adventure Communications, Inc. v. Kentucky Registry of Elec. Fin.,* 191 F.3d 429, 440 (4th Cir.1999) ("[L]aws that do not touch or concern speech or expressive activity in the first instance do not raise First Amendment concerns, even though

they apply to the press, unless they impermissibly single out the media. Such laws are subject to heightened scrutiny only if they target or disproportionately burden the press. Otherwise, we simply apply a rational basis review [if appropriate under other constitutional provisions]." (citations omitted)).

## IV.

Willis also challenges the Town's actions on Equal Protection grounds.

## A.

■ To the extent that Willis's claim is a facial challenge to the propriety of the Town's treatment of lewd dancing, her claim is foreclosed by our conclusion that recreational dancing is not protected by the First Amendment. "In areas of social and economic policy, a ... classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). In other words, a "classification that neither employs inherently suspect distinctions nor burdens the exercise of a fundamental constitutional right will be upheld if the classification is rationally related to a legitimate state interest." *Star Scientific, Inc. v. Beales,* 278 F.3d 339, 351 (4th Cir.2002).

fact that a policy is not committed to writing does not of itself constitute a First Amendment violation." (citation and internal quotation marks omitted)); *accord Lebron v. National R.R. Passenger Corp. (Amtrak),* 69 F.3d 650, 658 (2d Cir.1995).

4. As Willis notes in her brief, the vagueness doctrine has some application in the Due Pro-

cess context as well as the First Amendment context. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). As we will explain later, however, we reject Willis's due process arguments on grounds unrelated to the asserted vagueness of the Town's policy.

■ Recreational dancing is not constitutionally protected, so the Town's decision to prohibit lewd dancing is thus subject to review under the lenient rational-basis standard. And under that standard, a prohibition against lewd or suggestive dancing at the Depot is unquestionably valid. The Town opened up the Depot for the Friday night events to provide a venue for wholesome, family entertainment. Protecting children from inappropriate sexual displays at the Depot is, at the very least, a legitimate governmental interest. *See, e.g., Sable Communications of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 131, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (noting that the government has a "compelling interest in protecting the physical and psychological well-being of minors" and "preventing minors from being exposed to indecent telephone messages"). A ban on lewd or suggestive dancing is rationally related to that interest. Accordingly, to the extent that Willis challenges the Town's lewd-dancing policy, that challenge fails.

### B.

■ Willis also contends, however, that she did not dance inappropriately. According to Willis, the Town used its power to regulate the behavior of those attending events at the Depot arbitrarily, by singling her out for punishment, while refusing to punish others who danced or dressed similarly. Among other things, Willis notes that the Town submitted affidavits from community members who stated that Willis and a dance partner "would hunch on the floor, simulating sexual intercourse." J.A. 47. The Town, however, banned only Willis; no action was taken against her unnamed partner.

■ "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (internal quotation marks and alteration omitted). Thus, the Supreme Court has recognized the validity of "class of one" Equal Protection claims, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

Willis's allegations of arbitrary singling-out by the Town are sufficient to support an *Olech* "class of one" claim. The district court, however, granted summary judgment in favor of the Town. The court explained that "[e]ven if other people danced similarly to [Willis], there is no evidence that [the Town] received complaints regarding their behavior. Therefore, [the Town] did not irrationally treat [Willis] differently from anyone else." J.A. 220.

Even assuming that the absence of complaints about others would establish that Willis was not similarly situated to the other patrons, an issue we need not decide today, we conclude that the granting of summary judgment was premature. Although the Town asserts in its argument that it received no complaints about any other Depot dancer, there is no *evidence* in the record demonstrating the absence of complaints. Whether complaints were or were not received is a matter wholly within the knowledge of the Town. Because the district court granted summary judgment before allowing any discovery, Willis had no opportunity to demonstrate that others situated similarly in this regard were not treated similarly. *See Harrods, Ltd. v. Sixty Internet Domain Names,* 302 F.3d

214, 246–47 (4th Cir.2002) ("Generally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." (internal quotation marks and alteration omitted)).[5] And because Willis's Rule 56(f) affidavit alerted the district court to Willis's specific need for this information, the district court abused its discretion by denying Willis's properly supported motion seeking additional discovery. *See* Fed.R.Civ.P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."); *Strag v. Board of Trustees*, 55 F.3d 943, 953 (4th Cir.1995) (holding that party seeking additional discovery must identify a Rule 56(f) "affidavit presented to the district court that particularly specifie[s] legitimate needs for further discovery." (internal quotation marks omitted)). Accordingly, we vacate the district court's grant of summary judgment in favor of the

Town on Willis's class-of-one Equal Protection claim.

## V.

Willis contends that the banishment from the Depot impermissibly infringed upon her constitutional right to travel and her right to be in a public forum,[6] thus supporting a substantive due process claim.

## A.

"[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citations and internal quotation marks omitted).

The Supreme Court's cases "have firmly established that the right of interstate travel is constitutionally protected." *Griffin v. Breckenridge*, 403 U.S. 88, 105, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also United States v. Guest*, 383 U.S. 745, 757,

---

**5.** The Town filed its motion to dismiss before a scheduling order was entered and thus before the parties conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure, and no conference was held before the district court converted the motion to one for summary judgment. Accordingly, this case was dismissed before the parties were ever authorized to begin conducting discovery. *See* Fed. R.Civ.P. 26(d) ("Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), ..., a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)....").

**6.** In the context of a First Amendment claim, the phrase "public forum" is a term of art, as are "limited public forum," designated "public forum," and "non-public forum." *See,*

e.g., *Perry Educ. Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). By referring to the Depot here as a public forum, we use that phrase in a more colloquial sense, to mean only that the Depot is property owned by the government that the government has opened up for certain uses by members of the public. We do not mean to suggest the Depot is a public forum within the specialized meaning of the First–Amendment forum-analysis cases. The district court concluded that the Depot was a limited (or designated) public forum, and our disposition of this case makes it unnecessary for us to consider the propriety of that determination.

86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) ("The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union.").

Whether there is a right to *intra* state travel that is sufficiently fundamental to fall within the scope of the substantive Due Process clause, however, is not entirely clear. The Supreme Court has not expressly recognized a fundamental right to intrastate travel, *see Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 255–56, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (declining to consider whether there is a constitutional difference between intrastate and interstate travel), but there is language in various cases that could be viewed as supporting the existence of such a right. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (noting that statute requiring those wandering the streets to provide police upon request with credible and reliable identification "implicates consideration of the constitutional right to freedom of movement"); *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900) ("[T]he right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution.").

As to Willis's narrower claim of a fundamental right to be in a public forum, there again is no definitive answer by the Supreme Court, but there are statements indicating that at least some members of the Court might agree with Willis. *See, e.g., City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (stating that individual liberty protected by the Due Process Clause includes the "decision to remain in a public place") (plurality opinion of Stevens, J., joined by Souter and Ginsburg, JJ.); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (stating that wandering or strolling are activities that "are historically part of the amenities of life as we have known them").

The circuit courts have not reached any clear answer on these questions either. *Compare Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir.2002) ("In view of the historical endorsement of a right to intrastate travel and the practical necessity of such a right, we hold that the Constitution protects a right to travel locally through public spaces and roadways."); *and Lutz v. City of York*, 899 F.2d 255, 259–68 (3d Cir.1990) (discussing Supreme Court's less-than clear right-to-travel cases, and ultimately concluding that the right to intrastate travel is a fundamental right protected by the Due Process clause) *with Doe v. City of Lafayette*, 377 F.3d 757, 770–71 (7th Cir.2004) (en banc) (canvassing cases and rejecting claim that sex offender's " 'right' to go the City's parks which he wishes to use for allegedly innocent, recreational purposes" is a fundamental liberty interest).

Ultimately, however, we conclude that in this case, there is no reason to decide whether the right to intrastate travel or the right to access a public forum are fundamental rights protected by the substantive component of the Due Process Clause. As a general rule, courts

> must be reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended, which means that the courts must exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by

the Due Process Clause be subtly transformed into the policy preferences of judges.

*Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir.1999) (en banc) (citations, internal quotation marks, and alterations omitted). Accordingly, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks and alteration omitted).

Whether we view Willis's substantive due process claim as involving a right to travel or a right of access to a public forum, the claim in reality mirrors her *Olech* Equal Protection claim, in that it centers on the arbitrary denial of access to public events held in a government-owned forum. Because Willis's substantive due process claim thus "fully overlaps" her Equal Protection claim, the district court properly rejected the due process claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 248 n. 11 (4th Cir.1999) (affirming dismissal of substantive due process claims where those claims "fully overlap[ped]" the plaintiff's First Amendment claims).

### B.

■ We turn now to Willis's procedural due process claims. The Due Process clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Although the language of the clause may be "cryptic and abstract[,] ... there can be no doubt that at a minimum [it] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (citation and internal quotation marks omitted). If the plaintiff has "los[t] something that fits into one of the three protected categories [of] life, liberty, or property," *Mallette v. Arlington County Employees' Supp. Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir.1996), then the question that must be answered is whether the plaintiff "receive[d] the minimum measure of procedural protection warranted under the circumstances." *Id.*

■ Willis contends that the procedural protections of the Due Process were triggered in the case because the banishment from the Depot deprived her of her First Amendment right to receive information, *see Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (explaining that "the liberty of speech and of the press which the First Amendment guarantees against abridgment by the federal government is within the liberty safeguarded by the Due Process Clause of the Fourteenth Amendment from invasion by state action."), and because it infringed on her right to travel. In our view, however, what Willis couches as a First Amendment liberty interest claim is better viewed as a liberty interest—her right to access a public forum. As we have indicated above, whether such a right is a fundamental liberty interest protected by the due process clause is far from clear.

Mindful of the need to move cautiously when considering novel due process questions, we decline to answer these questions in this case. Willis's procedural due process claim adds nothing to her case against the Town. That is, we can conceive of no set of circumstances under which a jury might reject her *Olech* Equal Protection

claim yet find in her favor on a procedural due process claim, nor is there reason to believe that the damages available to Willis would differ if awarded on a due process claim rather than an Equal Protection claim. Thus, even assuming that the district court erred by dismissing Willis's procedural due process claim, Willis has suffered no prejudice from that error.

## VI.

Finally, we turn to Willis's appeal of the district court's denial of her request for a preliminary injunction that would require the Town to re-admit Willis to Depot events.

█ When considering a request for a preliminary injunction, a court must consider "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (internal quotation marks omitted).

The district court rejected Willis's request for a preliminary injunction by concluding that Willis had not demonstrated irreparable harm or a likelihood success on the merits. Given the discretionary nature of a preliminary injunction, *see, e.g.*, *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir.2001), and mindful that the district court did not explicitly address Willis's Equal Protection claim in its order denying her motion for a preliminary injunction, we believe it prudent to give the district court the opportunity to re-consider the request for an injunction. Accordingly, we vacate the district court's denial of a preliminary injunction and we remand for the district court to consider, in accordance with the substantive legal principles we have set forth today, whether an injunction is warranted. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 254 (4th Cir.1993) (reversing denial of preliminary injunction and remanding for reconsideration); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 367 (4th Cir.1991) (same).

## VII.

Accordingly, for the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the Town on Willis's First Amendment claims and her substantive and procedural due process claims. We vacate the district court's grant of summary judgment in favor of the Town as to Willis's class-of-one Equal Protection claim, and we remand for further proceedings on those claims. We likewise vacate the district court's denial of Willis's request for a preliminary injunction and we remand for reconsideration of that request.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

WILLIAMS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in Parts I–IV and VI–VII of the majority opinion. While I concur in the judgment of Part V—affirming the district court's grant of summary judgment on Willis's substantive due process claims—I cannot join the opinion's analysis in that Part. Instead, and with respect, I would resolve those claims on simpler grounds.

The majority identifies two substantive due process claims in Willis's complaint: that the Town's ban violated her right to be present in a public place and that the ban violated her right to intrastate travel. This reading of the complaint is a generous one, but the Town does not argue, in

opposition to Willis's briefing on these claims, that the complaint should not be so read. I therefore assume that the complaint alleges these claims.

My difficulty with Willis's substantive due process claims begins, then, not with the complaint, but with Willis's brief. Her brief does not once argue, much less cite a single case for the proposition, that the Constitution creates the right to be present in a public place. To be sure, Willis's brief contains a heading entitled "The Town is Violating Mrs. Willis's Constitutional Right to be Present in a Public Place." Appellant's Opening Br. at 29. The entire argument in that section, however, contends that by prohibiting Willis's presence at the Depot, the Town violated her *right to travel*. I would therefore interpret Willis's brief not to argue that the Town's ban violated some freestanding right to be present in a public place, but rather that by banning her from the Depot, a public place, the Town violated her right to travel. *Cf.* Fed. R.App. P. 28(a)(9)(A) (providing that appellant's brief must contain the "contentions and the reasons for them, with citations to the authorities ... on which the appellant relies"); *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 58 F.3d 988, 993 n. 7 (4th Cir.1995) (en banc) (holding that mere listing of issues is not sufficient to preserve them).

I believe, moreover, that Willis's right-to-travel argument is without merit. The Supreme Court has held only that the Constitution creates a right to international and interstate travel. *See Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) (international travel); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (interstate travel), *overruled in part on other*

grounds by *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *Cf. Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 277, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (holding that a barrier to purely intrastate movement does not violate the right to interstate travel). Even if we were to extend the Constitution beyond its current reach and conclude that the substantive Due Process Clause creates a right to intrastate travel, Willis's allegations would not state a claim for the violation of that right. The right to travel, be it international, interstate, or even intrastate (assuming such a right exists), protects the right of *movement* from place to place. *See Kent,* 357 U.S. at 126, 78 S.Ct. 1113 ("[The] freedom of *movement* is ... [deeply ingrained in our history]. Freedom of *movement* across frontiers in either direction, and inside frontiers as well, was a part of our heritage." (Emphases added)); *Shapiro,* 394 U.S. at 629, 89 S.Ct. 1322 ("[O]ur constitutional concepts of personal liberty ... require that all citizens be free to *travel* throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this *movement.*" (Emphases added)); *Johnson v. City of Cincinnati,* 310 F.3d 484, 498 (6th Cir.2002) (concluding that "the right to travel locally *through* public spaces and roadways enjoys a unique and protected place in our national heritage" (emphasis added)), *Lutz v. City of York,* 899 F.2d 255, 268 (3d Cir.1990) ("We conclude that the right to *move* freely about one's own neighborhood or town, even by automobile, is indeed [embedded in the Constitution]." (Emphasis added)). The Town's ban here, by contrast, prohibits only Willis's *presence* at a particular place, and it in no way implicates the right to travel.*

* Of course, a government could violate the right to intrastate travel, assuming one exists,

by prohibiting a person's presence in an area so large that the prohibition effectively inhi-

Accordingly, I would affirm the district court's grant of summary judgment to the Town on Willis's substantive due process claims. Moreover, because Willis cannot show that the Town violated a right— arising under either the First Amendment or the substantive Due Process Clause— that is protected by the procedural Due Process Clause, I would affirm the district court's grant of summary judgment to the Town on Willis's procedural due process claims. *See Mallette v. Arlington County Employees' Supp. Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir.1996) (holding that the procedural Due Process Clause applies only when the plaintiff has been deprived of a "life, liberty, or property" right).

bits travel; for example, if the Town's ban excluded Willis not just from the Depot, but from all of Madison County. *Cf. Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir.2002) (finding that ordinance prohibiting those convicted of drug crimes from being present in designated "drug exclusion zones" violated the right to intrastate travel where the ordinance interfered with the "right to travel locally through public spaces and roadways"). On no reasonable view of the facts here, however, can the Town's ban be said similarly to inhibit Willis's ability to move from place to place.